## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., et al., | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| | ) | |
| Zonolite Attic Insulation Property | ) | |
| Damage Claimants | ) | |
| | ) | |
| Appellants, | ) | Case No. 07-CV-005 (RLB) |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. Grace & Co., et al., | ) | |
| | ) | |
| Appellees. | ) | |

### ZAI CLAIMANTS' NOTICE OF SUPPLEMENTAL AUTHORITY IN SUPPORT OF ZAI ATTIC INSULATION PROPERTY DAMAGE CLAIMANTS' MOTION FOR LEAVE TO APPEAL

The ZAI Claimants bring to this Court's attention the March 20, 2007 decision of the United States Supreme Court in Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric Co., No. 05-1429, decided two weeks after oral argument in this matter on March 5, 2007.

The ZAI Claimants invite this Court's attention to Pages 5-7 of the attached Slip Opinion in which the Supreme Court holds unequivocally, "that the basic federal rule in bankruptcy is that state law governs the substance of claims, Congress having generally left the determination of property rights in the assets of a bankrupt's estate to state law," and that "[u]nless some federal interest requires a different result, there is no reason why such interests should be

analyzed differently simply because an interested party is involved in a bankruptcy proceeding."

Exhibit A, slip op. at 6-7 (internal quotations omitted).

Dated: March 22, 2007
     Wilmington, Delaware

          WILLIAM D. SULLIVAN, LLC

          William D. Sullivan (2820)
          Elihu E. Allinson, III (3476)
          4 East 8th Street, Suite 400
          Wilmington, Delaware 19801
          Telephone: (302) 428-8191

          -- and --

          RICHARDSON, PATRICK,
          WESTBROOK & BRICKMAN, LLC
          Edward J. Westbrook
          Robert M. Turkewitz
          1037 Chuck Dawley Blvd., Bldg. A
          Mt. Pleasant, South Carolina 29464
          Telephone: (843) 727-6500

          -- and --

          THE SCOTT LAW GROUP, P.S.
          Darrell W. Scott
          926 W. Sprague Avenue
          Chronicle Building, Suite 583
          Spokane, Washington 99201
          Telephone: (509) 455-3966

          *Special Counsel for ZAI Claimants*

# EXHIBIT A

(Slip Opinion)  OCTOBER TERM, 2006  1

Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.*, 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## TRAVELERS CASUALTY & SURETY CO. OF AMERICA *v.* PACIFIC GAS & ELECTRIC CO.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 05–1429.  Argued January 16, 2007—Decided March 20, 2007

After respondent (PG&E) filed for Chapter 11 bankruptcy, petitioner (Travelers), which had previously issued a surety bond to guarantee PG&E's payment of state workers' compensation benefits, asserted a claim in the bankruptcy action to protect itself should PG&E default on the benefits.  With the Bankruptcy Court's approval, PG&E agreed to insert language into its reorganization plan and disclosure statement to protect Travelers in case of such a default.  Additional litigation over the negotiated language nevertheless ensued and was ultimately resolved by a court-approved stipulation stating, *inter alia,* that Travelers could assert a general unsecured claim for attorney's fees, which were authorized in the parties' original indemnity agreements.  When Travelers filed an amended claim for such fees, PG&E objected based on the rule the Ninth Circuit adopted in its prior *Fobian* decision that where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees generally will not be awarded.  The Bankruptcy Court rejected Travelers' claim on that basis, and the District Court and the Ninth Circuit affirmed.

*Held:*

1. Federal bankruptcy law does not disallow contract-based claims for attorney's fees based solely on the fact that the fees were incurred litigating bankruptcy law issues.  Because the *Fobian* rule finds no support in federal bankruptcy law, the Ninth Circuit erred in disallowing Travelers' claim.  Pp. 4–12.

(a) The American rule that "the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser," *Alyeska Pipeline Service Co.* v. *Wilderness Society,* 421 U. S. 240, 247,

may be overcome by, *inter alia*, an "enforceable contract" allocating
such fees, *Fleischmann Distilling Corp.* v. *Maier Brewing Co.*, 386
U. S. 714, 717. A contract allocating attorney's fees that is enforce-
able under substantive, nonbankruptcy law is allowable in bank-
ruptcy except where the Bankruptcy Code provides otherwise. Cf.
*Security Mortgage Co.* v. *Powers*, 278 U. S. 149, 154. The Code does
not do so here. Pp. 4–5.

(b) Under the Bankruptcy Code, the bankruptcy court "shall al-
low" a creditor's claim "except to the extent that" the claim implicates
any of nine enumerated exceptions. 11 U. S. C. §502(b). Because
Travelers' attorney's fees claim has nothing to do with the exceptions
set forth in §§502(b)(2)–(9), it must be allowed unless it is unenforce-
able under §502(b)(1), which disallows any claim that is "unenforce-
able against the debtor and property of the debtor, under any agree-
ment or applicable law for a reason other than because such claim is
contingent or unmatured." Pp. 5–6.

(c) Section 502(b)(1) is most naturally understood to provide that,
with limited exceptions, any defense to a claim that is available out-
side of the bankruptcy context is also available in bankruptcy. This
reading is consistent not only with the plain statutory text, but also
with the settled principle that "[c]reditors' entitlements in bank-
ruptcy arise in the first instance from the underlying substantive law
creating the debtor's obligation, subject to any qualifying or contrary
provisions of the Bankruptcy Code." *Raleigh* v. *Illinois Dept. of Reve-
nue*, 530 U. S. 15, 20. That principle requires bankruptcy courts to
consult state law in determining the validity of most claims. See
*ibid.* Thus, when the Code uses the word "claim"—*i.e.*, a "right to
payment," §101(5)(A)—it is usually referring to a right to payment
recognized under state law, "[u]nless some federal interest requires a
different result," *Butner* v. *United States*, 440 U. S. 48, 55. Pp. 6–7.

(d) The *Fobian* rule finds no support in §502 or elsewhere in fed-
eral bankruptcy law. The *Fobian* court did not identify any Code pro-
vision as presenting such support, but instead cited three of its own
prior decisions, none of which identified any basis for disallowing a
contractual claim for attorney's fees. Nor did the court have occasion
to do so; in each of those cases, the attorney's fees claim failed as a
matter of state law. The absence of such textual support is fatal for
the *Fobian* rule. See *FCC* v. *NextWave Personal Communications
Inc.*, 537 U. S. 293, 302. In light of §502(b)(1)'s broad, permissive
scope, and the Court's prior recognition that "the character of [a con-
tractual] obligation to pay attorney's fees presents no obstacle to en-
forcing it in bankruptcy," it necessarily follows that the *Fobian* rule
cannot stand. *Security Mortgage, supra*, at 154. Pp. 7–10.

2. The Court expresses no opinion as to PG&E's arguments that

Cite as: 549 U. S. ____ (2007)                    3

Syllabus

unsecured claims for contractual attorney's fees, such as Travelers',
are categorically disallowed by §506(b), which expressly authorizes
such fees "[t]o the extent that an allowed secured claim is secured by
property [whose] value [exceeds] the amount of such claim," and that
such disallowance is confirmed by the Bankruptcy Code's structure
and purpose, as examined against the backdrop of pre-Code bank-
ruptcy law.  The Court ordinarily does not consider arguments, such
as these, that were neither raised nor addressed below, *Cooper Indus-
tries, Inc.* v. *Aviall Services, Inc.*, 543 U. S. 157, 168–169, and PG&E
has not identified any circumstances warranting an exception to that
rule here.  PG&E's insistence that its arguments are "fairly included"
within the question presented in the certiorari petition is not persua-
sive.  Pp. 10–12.

167 Fed. Appx. 593, vacated and remanded.

    ALITO, J., delivered the opinion for a unanimous Court.

Cite as: 549 U. S. ____ (2007)    1

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 05–1429

### TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, PETITIONER *v.* PACIFIC GAS AND ELECTRIC COMPANY

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

[March 20, 2007]

JUSTICE ALITO delivered the opinion of the Court.

We are asked to consider whether federal bankruptcy law precludes an unsecured creditor from recovering attorney's fees authorized by a prepetition contract and incurred in postpetition litigation. The Court of Appeals for the Ninth Circuit held, based on a rule previously adopted by that court, that such fees are categorically prohibited—even where the contractual allocation of attorney's fees would be enforceable under applicable nonbankruptcy law—to the extent the litigation involves issues of federal bankruptcy law. Because that rule finds no support in the Bankruptcy Code, we vacate and remand.

I

Respondent Pacific Gas and Electric Company (PG&E) filed a voluntary Chapter 11 bankruptcy petition in April 2001, 11 U. S. C. §1101 *et seq.*, and continued thereafter to operate its business as a "debtor in possession." §§1107(a), 1108. The bankruptcy filing caught the attention of petitioner Travelers Casualty & Surety Company (Travelers),

which had previously issued a $100 million surety bond on
PG&E's behalf to the California Department of Industrial
Relations, guaranteeing PG&E's payment of state work-
ers' compensation benefits to injured employees.[1]    In
connection with the bond, PG&E executed a series of
indemnity agreements in favor of Travelers. The indem-
nity agreements provide that PG&E will be responsible for
any loss Travelers might incur in connection with the
bonds, including any attorney's fees incurred in pursuing,
protecting, or litigating Travelers' rights in connection
with those bonds.

Although no default occurred, Travelers asserted a
claim in the bankruptcy action to protect itself in case
PG&E defaulted on its workers' compensation benefits at
some point in the future, requiring Travelers to make
payments under its bond. In response to Travelers' claim,
and with the knowledge and approval of the Bankruptcy
Court, PG&E agreed to insert language into its reorgani-
zation plan and disclosure statement to protect Travelers'
right to indemnity and subrogation in the event of a de-
fault by PG&E.

Travelers claims, however, that PG&E then unilaterally
altered the negotiated language in a way that substan-
tially diminished the protection it had been seeking.
According to Travelers, that development resulted in
additional litigation, but Travelers and PG&E ultimately
resolved the dispute by entering into a stipulation that

---

[1] California law required PG&E to provide workers' compensation
benefits for its employees by either (1) purchasing workers' compensa-
tion insurance from a licensed provider of such insurance or (2) adopt-
ing a plan, with the State's approval, to self-insure. PG&E chose the
latter option, and was therefore required to post security with the State
to ensure ongoing payment of mandatory workers' compensation
benefits. See Cal. Lab. Code Ann. §§3700, 3701 (West 2003). Travelers
posted the required security by issuing a bond on PG&E's behalf. The
bond makes Travelers liable, up to $100 million, for workers' compensa-
tion benefits in the event of a default by PG&E.

Opinion of the Court

was later approved by the Bankruptcy Court. In addition to accommodating Travelers' substantive concerns, the stipulation stated that Travelers "may assert its claim for attorneys' fees under the [i]ndemnity [a]greements" (subject to PG&E's right to object) as a general unsecured claim against PG&E. Brief for Petitioner 17.

Travelers subsequently filed an amended proof of claim seeking to recover the attorney's fees it incurred in connection with PG&E's bankruptcy proceedings. PG&E objected, arguing that Travelers could not recover attorney's fees incurred while litigating issues of bankruptcy law.

The Bankruptcy Court agreed and rejected Travelers' claim on that basis. App. to Pet. for Cert. 23a–25a. Travelers appealed that ruling to the District Court. The District Court affirmed, relying on *In re Fobian*, 951 F. 2d 1149 (CA9 1991), which held that "where the litigated issues involve not basic contract enforcement questions, but issues peculiar to federal bankruptcy law, attorney's fees will not be awarded absent bad faith or harassment by the losing party," *id.*, at 1153. See App. to Pet. for Cert. 10a, 17a.

Travelers appealed again, and the United States Court of Appeals for the Ninth Circuit affirmed. 167 Fed. Appx. 593 (2006). The panel acknowledged that, in at least some circumstances, a "'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law . . . .'" *Id.*, at 594 (quoting *In re Baroff*, 105 F. 3d 439, 441 (CA9 1997)). The panel nevertheless rejected Travelers' claim based on the *Fobian* rule, which it cited for the proposition that "attorney fees are not recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.'" 167 Fed. Appx., at 594 (quoting *Fobian*, *supra*, at 1153). The panel explained that, because the fees claimed by Travelers were incurred litigating issues that were "governed entirely by

federal bankruptcy law," Travelers' claim necessarily
failed.[2] 167 Fed. Appx., at 594.

Travelers sought review in this Court, noting a conflict
among the Courts of Appeals regarding the validity of the
*Fobian* rule. Compare *Fobian, supra,* at 1153, with *In re
Shangra-La, Inc.,* 167 F. 3d 843, 848–849 (CA4 1999). We
granted certiorari to resolve that conflict, 549 U. S. ___
(2006).

## II

Under the American Rule, "the prevailing litigant is
ordinarily not entitled to collect a reasonable attorneys' fee
from the loser." *Alyeska Pipeline Service Co.* v. *Wilderness
Society,* 421 U. S. 240, 247 (1975); see *Hauenstein* v. *Lyn-
ham,* 100 U. S. 483, 490–491 (1880); *Arcambel* v. *Wise-
man,* 3 Dall. 306 (1796). This default rule can, of course,
be overcome by statute. *Fleischmann Distilling Corp.* v.
*Maier Brewing Co.,* 386 U. S. 714, 717 (1967). It can also
be overcome by an "enforceable contract" allocating attor-
ney's fees. *Ibid.*

In a case governed by the Bankruptcy Act of 1898, we
observed that "[t]he character of [a contractual] obligation
to pay attorney's fees presents no obstacle to enforcing it
in bankruptcy, either as a provable claim or by way of a
lien upon specific property." *Security Mortgage Co.* v.
*Powers,* 278 U. S. 149, 154 (1928). Similarly, under the
terms of the current Bankruptcy Code, it remains true
that an otherwise enforceable contract allocating attor-
ney's fees (*i.e.,* one that is enforceable under substantive,
nonbankruptcy law) is allowable in bankruptcy except

---

[2]The Court of Appeals incorporated by reference the reasoning em-
ployed in *In re DeRoche,* 434 F. 3d 1188 (CA9 2006), which was decided
by the same panel that decided this case. 167 Fed. Appx., at 593.
Although the *DeRoche* opinion is longer than its counterpart in this
case, it adds very little to the panel's explanation of the *Fobian* rule.
See *DeRoche, supra,* at 1190–1192.

Opinion of the Court

where the Bankruptcy Code provides otherwise. See 4 Collier on Bankruptcy ¶ 506.04[3][a], p. 506–118 (rev. 15th ed. 2006) (hereinafter Collier).

This case requires us to consider whether the Bankruptcy Code disallows contract-based claims for attorney's fees based solely on the fact that the fees at issue were incurred litigating issues of bankruptcy law. We conclude that it does not.

### A

When a debtor declares bankruptcy, each of its creditors is entitled to file a proof of claim—*i.e.*, a document providing proof of a "right to payment," 11 U. S. C. §101(5)(A)—against the debtor's estate. Once a proof of claim has been filed, the court must determine whether the claim is "allowed" under §502(a) of the Bankruptcy Code: "A claim or interest, proof of which is filed under section 501 . . . is deemed allowed, unless a party in interest . . . objects."

But even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in §502(b). *Ibid.* Those exceptions apply where the claim at issue is "unenforceable against the debtor . . . under any agreement or applicable law," §502(b)(1); "is for unmatured interest," §502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, §502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," §502(b)(4); is for unmatured debt on certain alimony and child support obligations, §502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, §§502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of . . . credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," §502(b)(8); or was brought to the court's

attention through an untimely proof of claim, §502(b)(9).

Travelers' claim for attorney's fees has nothing to do with property tax, child support or alimony, services provided by an attorney of the debtor, damages resulting from the termination of a lease or employment contract, or the late payment of any employment tax. See §§502(b)(2)–(8). Nor does it appear that the proof of claim was untimely. See §502(b)(9). Thus, Travelers' claim must be allowed under §502(b) unless it is unenforceable within the meaning of §502(b)(1).

### B

Section 502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. See 4 Collier ¶ 502.03[2][b], at 502–22 (explaining that §502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law"—*i.e.*, any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").

This reading of §502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy Code." *Raleigh* v. *Illinois Dept. of Revenue*, 530 U. S. 15, 20 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.*

Indeed, we have long recognized that the "'basic federal

Opinion of the Court

rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.' " *Ibid.* (quoting *Butner* v. *United States,* 440 U. S. 48, 57, 54 (1979); citation omitted).  Accordingly, when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a "right to payment," 11 U. S. C. §101(5)(A)—it is usually referring to a right to payment recognized under state law.  As we stated in *Butner,* "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U. S., at 55; accord, *Vanston Bondholders Protective Comm.* v. *Green,* 329 U. S. 156, 161 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

C

In rejecting Travelers' claim for contractual attorney's fees, the Court of Appeals did not conclude that the claim was "unenforceable" under §502(b)(1) as a matter of applicable nonbankruptcy law.  Nor did it conclude that Travelers' claim was rendered unenforceable by any provision of the Bankruptcy Code.  To the contrary, the court acknowledged that, in at least some circumstances, a "'prevailing party in a bankruptcy proceeding may be entitled to an award of attorney fees in accordance with applicable state law . . . .'" 167 Fed. Appx., at 594 (quoting *Baroff,* 105 F. 3d, at 441).

The court nevertheless rejected Travelers' claim based solely on a rule of that court's own creation—the so-called *Fobian* rule—which dictates that "attorney fees are not

8     TRAVELERS CASUALTY & SURETY CO. OF AMERICA *v.*
PACIFIC GAS & ELEC. CO.
Opinion of the Court

recoverable in bankruptcy for litigating issues 'peculiar to federal bankruptcy law.'" 167 Fed. Appx., at 594 (quoting *Fobian*, 951 F. 2d, at 1153). The court explained that, because the fees claimed by Travelers were incurred litigating issues that were "governed entirely by federal bankruptcy law," 167 Fed. Appx., at 594, Travelers' claim necessarily failed.

The *Fobian* rule finds no support in the Bankruptcy Code, either in §502 or elsewhere. In *Fobian*, the court did not identify any provision of the Bankruptcy Code as providing support for the new rule. See 951 F. 2d, at 1153. Instead, the court cited three of its own prior decisions, *In re Johnson*, 756 F. 2d 738 (1985); *In re Coast Trading Co.*, 744 F. 2d 686 (1984); and *In re Fulwiler*, 624 F. 2d 908 (1980) *(per curiam)*. Significantly, in none of those cases did the court identify any basis for disallowing a contractual claim for attorney's fees incurred litigating issues of federal bankruptcy law. Nor did the court have occasion to do so; in each of those cases, the claim for attorney's fees failed as a matter of state law. See *Johnson, supra*, at 741–742; *Coast Trading, supra*, at 693; *Fulwiler, supra*, at 910.[3]

The absence of textual support is fatal for the *Fobian* rule. Consistent with our prior statements regarding

---

[3]In *Johnson*, the debtor sought attorney's fees after the creditor unsuccessfully requested relief from the automatic stay under 11 U. S. C. §362(d)(1). The debtor acknowledged that the contract between the parties entitled only the creditor to attorney's fees, but the debtor claimed that a California statute extended that entitlement to both parties. The court rejected that argument, noting that the statute applied only in the context of an "'action on a contract,'" and concluding that a request for relief from an automatic stay could not be considered an action on a contract. 756 F. 2d, at 741–742. Both *Coast Trading* and *Fulwiler* involved claims for attorney's fees based on an Oregon statute similar to the statute at issue in *Johnson;* the court found the statute inapplicable in both cases. *Coast Trading*, 744 F. 2d, at 693; *Fulwiler*, 624 F. 2d, at 909–910.

Opinion of the Court

creditors' entitlements in bankruptcy, see, *e.g., Raleigh,* 530 U. S., at 20, we generally presume that claims enforceable under applicable state law will be allowed in bankruptcy unless they are expressly disallowed. See 11 U. S. C. §502(b). Neither the court below nor PG&E has offered any reason why the fact that the attorney's fees in this case were incurred litigating issues of federal bankruptcy law overcomes that presumption.

Section 502(b)(4) is instructive on this point. That provision expressly disallows claims for a particular category of attorney's fees—those "for services of an . . . attorney of the debtor," to the extent the claimed fees "excee[d] the reasonable value of such services." The existence of that provision suggests that, in its absence, a claim for such fees would be allowed in bankruptcy to the extent enforceable under state law. The absence of an analogous provision excluding the category of fees covered by the *Fobian* rule likewise suggests that the Code does not categorically disallow them. See 4 Collier ¶ 506.04[3][a], at 506–118 (concluding that *Fobian* "inverts the proper analysis" by allowing attorney's fees only where they are expressly authorized by the Bankruptcy Code, and explaining that "a claim for attorney's fees arising in the context of litigating bankruptcy issues must be allowed if valid under applicable state law").

Congress, of course, has the power to amend the Bankruptcy Code by adding a provision expressly disallowing claims for attorney's fees incurred by creditors in the litigation of bankruptcy issues. But because no such provision exists, the Bankruptcy Code provides no basis for disallowing Travelers' claim on the grounds stated by the Ninth Circuit.

As we explained in *FCC* v. *NextWave Personal Communications Inc.,* 537 U. S. 293 (2003), "where Congress has intended to provide . . . exceptions to provisions of the Bankruptcy Code, it has done so clearly and expressly."

*Id.*, at 302. Here, the Bankruptcy Code does not "clearly and expressly" compel courts to follow the *Fobian* rule; on the contrary, the Code says *nothing* about unsecured claims for contractual attorney's fees incurred while litigating issues of bankruptcy law. In light of the broad, permissive scope of §502(b)(1), and our prior recognition that "the character of [a contractual] obligation to pay attorney's fees presents no obstacle to enforcing it in bankruptcy," it necessarily follows that the *Fobian* rule cannot stand. *Security Mortgage*, 278 U. S., at 154; see *Cohen* v. *de la Cruz*, 523 U. S. 213, 221 (1998) ("We . . . 'will not read the Bankruptcy Code to erode past bankruptcy practice absent a clear indication that Congress intended such a departure'" (quoting *Pennsylvania Dept. of Public Welfare* v. *Davenport*, 495 U. S. 552, 563 (1990))).

### III

PG&E makes no effort to defend the *Fobian* rule. See Tr. of Oral Arg. 28 (conceding that PG&E does not defend the *Fobian* rule, and acknowledging that "[t]he Fobian rule is wrong . . . as to the distinction that it draws between State law and Federal litigation"). Instead, PG&E argues that §506(b) categorically disallows unsecured claims for contractual attorney's fees and—noting that Travelers' claim is unsecured—asks us to affirm on that basis. Section 506(b) provides as follows:

"To the extent that an allowed secured claim is secured by property the value of which . . . is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose." 11 U. S. C. A. §506(b) (Supp. 2006).

According to PG&E, this provision authorizes claims for contractual attorney's fees to the extent the creditor is

Opinion of the Court

oversecured, but disallows such claims to the extent the creditor is either not oversecured or (like Travelers) completely unsecured. This reading of the Code, PG&E argues, "is not a matter of negative implication, but of explicit negation." Brief for Respondent 18. PG&E also argues that the structure and purpose of the Bankruptcy Code, examined against the backdrop of pre-Code bankruptcy law, confirm that Congress did not intend to allow unsecured creditors to recover attorney's fees. See *id.*, at 25–38.

PG&E did not raise these arguments below. Consequently, none of the lower courts had occasion to address them. Nor were these arguments presented in PG&E's brief in opposition to certiorari. PG&E nevertheless insists that we should address these arguments as though they were "fairly included" within the question presented in Travelers' petition for certiorari. See *id.*, at 41. That contention appears to be premised on the theory that "the Fobian rule reaches the correct conclusion in this case," but "doesn't go far enough in . . . preventing creditors from requiring other creditors to pay for their attorneys' fees." Tr. of Oral Arg. 25.

We are not persuaded. We granted certiorari to resolve a conflict among the lower courts regarding the *Fobian* rule, which is analytically distinct from, and fundamentally at odds with, PG&E's reading of §506(b).[4]

In any event, we ordinarily do not consider claims that were neither raised nor addressed below, *Cooper Indus-*

---

[4] PG&E's new reading of the Code would prohibit *all* unsecured creditors from recovering contractual, postpetition attorney's fees in bankruptcy proceedings—even if those fees were incurred while litigating issues of state law. See Brief for Respondent 17–19. The *Fobian* rule, by contrast, would allow such a recovery—even by unsecured creditors—so long as the litigation resulting in the claimed fees did not involve "issues peculiar to federal bankruptcy law." See *In re Fobian*, 951 F. 2d 1149, 1153 (CA9 1991).

12    TRAVELERS CASUALTY & SURETY CO. OF AMERICA *v.*
PACIFIC GAS & ELEC. CO.

Opinion of the Court

*tries, Inc.* v. *Aviall Services, Inc.*, 543 U. S. 157, 168–169
(2004), and PG&E has failed to identify any circumstances
that would warrant an exception to that rule in this case.
We therefore will not consider these arguments.[5]

Accordingly, we express no opinion with regard to
whether, following the demise of the *Fobian* rule, other
principles of bankruptcy law might provide an independ-
ent basis for disallowing Travelers' claim for attorney's
fees. We conclude only that the Court of Appeals erred in
disallowing that claim based on the fact that the fees at
issue were incurred litigating issues of bankruptcy law.

\*    \*    \*

The judgment of the United States Court of Appeals for
the Ninth Circuit is therefore vacated, and the case is
remanded for further proceedings consistent with this
opinion.

*It is so ordered.*

---

[5]For similar reasons, we will not address PG&E's argument that
Travelers' claim should be denied based on the theory that the fees at
issue were incurred in connection with activities that were not rea-
sonably necessary to preserve Travelers' rights and, alternatively, were
not authorized by Travelers' contract with PG&E. See Brief for Re-
spondent 42–49. This argument was not addressed below, was not
raised in PG&E's brief in opposition to certiorari, and bears no relation
to the question presented. See this Court's Rule 14.1(a) ("Only the
questions set out in the petition, or fairly included therein, will be
considered by the Court").

## CERTIFICATE OF SERVICE

I, William D. Sullivan, hereby certify that on the 22nd day of March, 2007, I caused a

copy of the *ZAI Claimants' Notice of Supplemental Authority in Support of ZAI Attic Insulation*

*Property Damage Claimants' Motion for Leave to Appeal* via First Class Mail to the parties on

the attached service list.


*March 22, 2007*                              ___ */s/ William D. Sullivan*___
Date                                          William D. Sullivan

Kirkland & Ellis LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianco
200 East Randolph Drive
Chicago, IL 60601

Reed Smith, LLP
James J. Restivo, Jr.
435 Sixth Avenue
Pittsburgh, PA 15210

Pachulski Stang Ziehl Young Jones &
Weintraub LLP
Laura Davis Jones
James E. O'Neill
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705

Bilzin Sumberg Baena Price & Axelrod LLP
Scott L. Baena
Jay M. Sakalo
200 S. Biscayne Blvd., Suite 2500
Miami, FL 33131-2336

Ferry Joseph & Pearce, P.A.
Michael B. Joseph
Theordore J. Tacconelli
Lisa L. Coggins
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE 19899

Orrick, Herrington & Sutcliffe LLP
Roger Frankel
Richard H. Wyron
3050 K Street, NW
Washington, DC 20007

Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 N. Broom Street
Wilmington, DE 19806

Stroock & Stroock & Lavan LLP
Lewis Kruger
Kenneth Pasquale
180 Maiden Lane
New York, NY 10038

Duane Morris LLP
Michael R. Lastowski
Richard W. Riley
1100 N. Market Street, Suite 1200
Wilmington, DE 19801

Duane Morris LLP
William S. Katchen
744 Broad Street, Suite 1200
Newark, NJ 07102

Kramer Levin Naftalis & Frankel LLP
Philip Bentley
Gregory Horowitz
Gary M. Becker
919 Third Avenue
New York, NY 10022

Klett Rooney Lieber & Schorling
Teresa K.D. Currier
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801

Caplin & Drysdale, Chartered
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY 10152

Caplin & Drysdale, Chartered
Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Jeffrey A. Liesemer
One Thomas Circle, NW
Washington, DC 20005

Cambpell & Levine, LLC
Marla Rosoff Eskin
Mark T. Hurford
Kathleen Campbell Davis
800 N. King Street, Suite 300
Wilmington, DE  19801

Office of the United States Trustee
David M. Klauder
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801