**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | Case No. 01-01139 (JKF) |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |

| | | |
|---|---|---|
| Zonolite Attic Insulation Property | ) | |
| Damage Claimants | ) | |
| | ) | |
| Appellants, | ) | Case No. 07-CV-005 (RLB) |
| | ) | |
| v. | ) | |
| | ) | |
| W.R. Grace & Co., *et al.*, | ) | |
| | ) | |
| Appellees. | ) | |

**ZAI CLAIMANTS' MOTION FOR RECONSIDERATION**
**OF MARCH 26, 2007 ORDER**

Pursuant to District Court Local Rule 7.1.5, the ZAI Claimants respectfully request reconsideration of this Court's March 26, 2007 Order denying the ZAI Claimants' Motion for Interlocutory Appeal.[1]  The ZAI Claimants believe, most respectfully, that the Court misapprehended a key argument warranting interlocutory appeal.  When viewed within the proper analytical framework, the statements in this Court's Order actually support interlocutory appeal.

**I.    This Court Misapprehended the Nature of the Bankruptcy Court's Error**

One of this Court's primary reasons for denying interlocutory appeal was its conclusion that the ZAI Claimants had failed to identify a controlling issue of law.  (Attachment A at 3.) But the Court's discussion illustrates precisely why the bankruptcy court's finding of no material

---

[1] Attachment A.

issue of fact constitutes a controlling error of law, because it conflicts with the unanimous precedent prescribing the substantive elements of an asbestos property claim. And, importantly, it conflicts with a recent unanimous Supreme Court decision prohibiting bankruptcy courts from imposing requirements for claim approval not prescribed by state law.[2]

In opposing Grace's motion for summary judgment, the ZAI Claimants did <u>not</u> contend that they were entitled to win as a matter of law by producing evidence of asbestos contamination regardless of levels. But this is how the Court misapprehended the ZAI Claimants' position:

> The problem with ZAI Claimants' argument is that they cannot point to any case that states the release of toxic substances alone, regardless of levels, is sufficient.

(Attachment A at 3.) This is not the Claimants' position on appeal of the summary judgment. What the ZAI Claimants do contend is that they are entitled to a hearing before a finder of fact upon presentation of evidence of asbestos contamination as presented below. Every asbestos property damage case to address the issue over the last 20 years has so held. At oral argument ZAI counsel repeatedly asked Grace to produce <u>one</u> case that has done what the bankruptcy court did, and Grace had none.[3]

The best illustration of the validity of the ZAI Claimants' position is this Court's discussion of <u>City of Greenville</u>:

> <u>Greenville,</u> in footnote 2, indeed suggests that the testimony, contrary to Grace's contention in that case could reasonably support a jury finding that the levels of contamination posed significant health risks for building occupants.

(Attachment A at 3.)

---

[2] <u>Travelers Cas. & Sur. Co. of Am. v. Pac Gas & Elec. Co.</u>, 127 S.Ct. 1199 (2007).

[3] Tr. March 5, 2007 Hearing at 36. (Attachment B.)

This Court thus recognized that City of Greenville held as a matter of law that the asbestos contamination proven there entitled the building owner to go to the jury. But the Court misapprehended the true implications of City of Greenville to this case. The levels of contamination sufficient to send that case to the jury were of the same order of magnitude or lower than the contamination levels in occupied areas of ZAI Claimants' homes as shown by the record before the bankruptcy court. In City of Greenville:

> [T]he testing revealed 8,550,000 asbestos fibers per square foot in the carpet of one office area, and 170,000 asbestos fibers per square foot on the surface of one office computer.[4]

The Fourth Circuit agreed with the jury that, based on this evidence, "the city hall was contaminated by significant amounts of asbestos...." 827 F.2d at 980.

The ZAI Claimants' evidence showed similar or greater contamination in home living areas. Thus, the Spencer home had 6.4 million asbestos structures per square foot in the dust on a child's game in a closet and 17.3 million asbestos structures per square foot on a shelf support in the closet. Similarly, the Salisbury home had 5.2 million asbestos structures per square foot from the carpet in a home office closet, 6.2 million asbestos structures per square foot from dust on the bedroom closet floor, and 37.4 million asbestos structures per square foot from dust on a cabinet door in the bedroom closet.[5] Yet the bankruptcy court granted summary judgment.

Simply stated, the proof proffered by the ZAI Claimants has proven sufficient to secure jury verdicts finding property damage, and those findings were affirmed on appeal. A fortiori, the bankruptcy court committed clear legal error on a controlling issue by failing to engage a fact finder to even consider the evidence.

---

[4] City of Greenville v. W.R. Grace & Co., 827 F.2d 975, 980 (4th Cir. 1987).

[5] Zonolite Attic Insulation Report, Exh. 43 to Motion for Summary Judgment at 22. (Attachment C.) The attic readings were orders of magnitude greater than City of Greenville. Id.

This Court correctly noted that City of Greenville did not hold as a matter of law that asbestos contamination at any level proves a property damage claim. (Attachment A at 3). More germanely, however, City of Greenville and the legion of asbestos property damage cases cited by the ZAI Claimants below did hold as a matter of law that once a building owner produces contamination evidence, the case is entitled to go to the jury. This distinction is critical to this appeal. The precise contamination level at which a plaintiff will prevail is a fact issue, not one that can be summarily disposed on limited evidence and without testimony, upon motion for summary judgment:

> Whether a particular asbestos product is unreasonably dangerous is
> a question of fact, not law.

Adams v. Johns Manville Sales Corp., 727 F.2d 533, 539 (5th Cir. 1984). The jury, not the court, always decides this issue when there is conflicting evidence. Clayton Ctr. Assoc. v. W.R. Grace & Co., 861 S.W.2d 686, 689 (Mo. App. 1993).

The controlling issue of law that this Court misapprehended is the bankruptcy court's failure to follow the unanimous line of state law decisions holding as a matter of law that the contest between dust contamination and air levels must be resolved by a jury, not on summary judgment. The bankruptcy court's unprecedented disregard of this well-established legal authority presents a controlling issue of law. Ruling on a similar issue, the Delaware district court found that when "the bankruptcy court's decision is contrary to well-established law," it presents both a controlling question of law and meets the other §1292(b) criteria.[6]

The Supreme Court has just reiterated the unmistakable legal error committed when a federal court imposes a different standard for allowance of a claim in bankruptcy from that permitted by state law. In Travelers Cas. & Sur. Co. of Am. v. Pac Gas & Elec. Co., 127 S.Ct.

---

[6] In re Marvel Entm't Group, Inc., 209 B.R. 832, 837 (D. Del. 1997).

1199 (2007), a federal court had imposed a requirement for recovering attorney's fees in bankruptcy not required by state law. The Supreme Court reversed, holding that a claim that would be permitted in state court must be permitted in bankruptcy unless one of the nine enumerated exceptions (none of which were applicable there or here) exist:

> Property interests are created and defined by state law, and [u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.

Id. at 1205 (internal quotes omitted).

By analyzing the elements of an asbestos property damage claim differently from the controlling law, the bankruptcy court committed the type of error that implicates §1292(b).

Clearly, the bankruptcy court's conclusion that there were no material issues of fact was a legal, not a factual conclusion. The Third Circuit has made this explicit:

> [B]ecause summary judgment may only be granted where there is no genuine issue of material fact, any purported "factual findings" of the bankruptcy court cannot be "factual findings" as to disputed issues of fact, but rather are conclusions as a matter of law that no genuine issue of material fact exists....[7]

The Third Circuit has clearly held that a federal court commits legal error by failing to follow state law that determines the sufficiency of evidence. In an instructive case, the Third Circuit reversed a district court for ruling that temporary property impairment by contamination was insufficient to make out a claim, when state law had found such temporary impairment sufficient.[8] Likewise, the Third Circuit reversed when a lower court deviated from controlling state law on the type of evidence necessary to make out an emotional distress claim.[9]

---

[7] Rosen v. Bezner, 996 F.2d 1527, 1530 n.2 (3d Cir. 1993).

[8] Jaasma v. Shell Oil Co., 412 F.3d 501 (3d Cir. 2005).

[9] McKenna v. Pac. Rail Serv., 32 F.3d 820 (3d Cir. 1994).

The bankruptcy court violated this well-established rule that federal courts must respect state precedent when determining what evidence is sufficient to present a claim to a jury.

**II.    This Court Misapprehended the ZAI Claimants' Position That When the Bankruptcy Court's Clear Error and the Likely Disruption of the Bankruptcy Court Reorganization Process are Considered, this Appeal Meets the Exceptional Circumstances Requirement**

Because this Court found no controlling issue of law, it is understandable that it viewed the ZAI Claimants' appeal as not presenting exceptional circumstances. (Attachment A at 2). Immediate review of an arguably supportable order is usually not necessary to advance a bankruptcy reorganization. But when an erroneous order presents a real and present danger of leading to a totally unconfirmable bankruptcy reorganization, §1292(b) review is especially appropriate.

This Court cast the ZAI Claimants' position on exceptional circumstances solely as a concern that the ZAI opinion might impede a consensual resolution. (Attachment A at 2). But at oral argument, the Claimants made clear that their overwhelming concern for this bankruptcy, quite apart from a parochial creditor's concern, was that any reorganization that failed to address ZAI fairly would be doomed to fail. Such failure will lead to more years of expensive procedures – all of which could be avoided by the clarity that an appeal would provide:

> But, Your Honor, if the bankruptcy plan gets negotiated, and either we are not considered adequately or the Bankruptcy Court dismisses claims and we're left out and we turn out to be right, then this whole bankruptcy plan will have to be redone, and after six years, who wants that versus one brief and thirty minutes of oral argument.
>
> The legislative history of 129 – 1292 says that extraordinary circumstances exist when, "Extended and expensive proceedings probably can be avoided."

> That's the hearings on HR 6238 in the 85th Congress. Your Honor, that's what we're trying to do, avoid the extended and expensive proceedings of going through the rest of this bankruptcy with ZAI shoved to the side and then find out we were right.[10]

As the Claimants noted at oral argument, "Exceptional Circumstances" arise in those situations "in which extended and expensive proceedings probably can be avoided."[11] Correcting a clearly erroneous order meets the exceptional circumstances requirement when it "has the potential to greatly conserve the resources of the judiciary and the parties." Chase Manhattan Bank v. Iridium Africa Corp., 324 F. Supp. 2d 540, 545-6 (D. Del. 2004). In Chase Manhattan, the bankruptcy judge who formerly handled this case looked to the numerous proceedings that had taken place, and "the effort already expended by all involved" to find exceptional circumstances. 324 F. Supp. at 546. The enormous effort already expended on the ZAI matter clearly justifies the same consideration. The exceptional burden imposed on the judiciary and parties by having to redo a bankruptcy plan that fails to treat a claimant group fairly was recently illustrated by In re Congoleum Corp., 2007 WL 328694 (Bkrtcy. D.N.J. Jan. 26, 2007). In that case, four years of bankruptcy proceedings and two proposed plans of reorganization were rejected because, inter alia, a creditor group was unfairly treated.

It is almost a certainty that without immediate appeal the same injustice will occur here, leading to an expensive "do over" for any Grace reorganization plan. The size of the ZAI

---

[10] Tr. March 5, 2007 Hearing at 61.  (Attachment B.)

[11] Hearings on H.R. 6238 and H.R. 7260 Before Subcomm. No. 3 of the House Comm. on the Judiciary, 85th Cong., 2d Sess., Ser. 11, at 14 (1958) as reprinted in 1958 U.S.C.C.A.N. 5255, 5262.  (Attachment D.)

potential claims (almost $3 billion using Grace's own estimates)[12] and Grace's current pronouncements about ZAI (possibly worth "0"),[13] make it virtually impossible that any plan will adequately address ZAI in a fair manner. ZAI is a major issue in this bankruptcy. Contrary to Grace's assertion at oral argument, ZAI <u>was</u> a reason Grace filed for bankruptcy.[14] Leaving ZAI in legal limbo is almost certain to doom a successful reorganization. The <u>In re Congoleum Corp.</u> case is but a recent reminder of the extraordinary waste of judicial effort that can occur when a major creditor is unfairly treated during reorganization. Such wasted effort clearly presents exceptional circumstances.

## CONCLUSION

Another court handling an asbestos bankruptcy recently noted:

> Whenever there is even the "slightest doubt regarding the facts of a case, summary judgment should not be granted."

<u>In re Congoleum Corp.</u>, 2007 WL 328694, at *1 (Bkrtcy. D. N.J. Jan. 26, 2007) (quoting the Third Circuit). The bankruptcy court here disregarded this fundamental rule and the controlling law directly contrary to its view. A decision that contradicts all controlling precedent, impacts a substantial creditor group, and needlessly imperils a timely bankruptcy resolution, cries out for interlocutory review.

---

[12] Tr. March 5, 2007 Hearing at 62. (Attachment B.)

[13] Tr. March 5, 2007 Hearing at 10. (Attachment B.)

[14] Grace contended that ZAI was not a driving force for its bankruptcy filing (Tr. March 5, 2007 Hearing at 48. (Attachment B), but Grace's official filings tell a different story. Grace's January 31, 2007 Notes to Combined Financial Statements state that "several adverse developments in its asbestos-related litigation," including "class action lawsuits alleging damages from Zonolite Attic Insulation ("ZAI") a former Grace attic insulation product" led to Grace's bankruptcy filing. (Attachment E.)

Interlocutory appeals are appropriately rare. But when they offer the opportunity to correct an error that threatens the finality and timeliness of the administration of justice, interlocutory appeal become not only justified, but necessary.

For the foregoing reasons the ZAI Claimants respectfully request that the Court reconsider its March 26, 2007 Order and give them the chance to fully brief the issues.[15]

Dated: April 4, 2007
    Wilmington, Delaware

RICHARDSON, PATRICK,
WESTBROOK & BRICKMAN, LLC
Edward J. Westbrook
Robert M. Turkewitz
1037 Chuck Dawley Blvd., Bldg. A
Mt. Pleasant, South Carolina 29464
Telephone: (843) 727-6500

- and -

THE SCOTT LAW GROUP, P.S.
Darrell W. Scott
926 W. Sprague Avenue
Chronicle Building, Suite 583
Spokane, Washington 99201
Telephone: (509) 455-3966

-and-

WILLIAM D. SULLIVAN, LLC

William D. Sullivan (2820)
Elihu E. Allinson, III (3476)
4 East 8th Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 428-8191

---

[15] While the ZAI Claimants have not separately discussed this Court's conclusion concerning the summary judgment standard (Attachment A at 2), they are confident that on full briefing they would demonstrate to this Court's satisfaction that the bankruptcy court improperly resolved numerous issues of disputed fact at the summary judgment stage.

ATTACHMENT

A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

In re:
W.R. GRACE & CO., et. al.,
    Debtors.

---

| | | |
|---|---|---|
| ZONOLITE ATTIC INSULATION | : | |
| PROPERTY DAMAGE CLAIMANTS, | : | |
|     Appellants | : | CASE NO. 07-MC-0005 (RLB) |
| | : | |
|      v. | : | Bankruptcy Case No. 01-1139 |
| | : | |
| W.R. GRACE & CO., et al., | : | |
|     Appellees. | : | |

---

## MEMORANDUM AND ORDER

BUCKWALTER, S. J.                                              March 26, 2007

      The Zonolite Attic Insulation Property Damage Claimants (ZAI Claimants) seek

to appeal the Bankruptcy Court's order of December 14, 2006, docket number 14015. Because

the order is interlocutory, the appeal has been filed pursuant to 28 U.S.C. § 158(a)(3) and Fed. R.

Bankr. P. 8003.

      Both parties agreed at oral argument that this court should apply the familiar 28

U.S.C. § 1292(b) standards; namely, permit the appeal where the interlocutory order "involves a

controlling question of law as to which there is a substantial ground for difference of opinion and

that an immediate appeal from the order may materially advance the ultimate termination of the

litigation. Debtor argues in its brief that ZAI Claimants must prove exceptional circumstances as

well; that is, something out of the ordinary must exist to depart from the usual policy of

postponing review until after the entry of final judgment. The order in this case is a standard

interlocutory one. While not in the order itself, the court in pages 52-53 of this opinion states:

> While the determination made herein may prove to be fatal to the property
> damage claims, several different theories of liability were proposed in the
> individual proofs of claim and may still need to be addressed. A status
> conference will be scheduled to discuss the form of an order regarding
> disposition of the proofs of claims; that is, which are subject to dismissal
> based upon the findings herein and what claims, if any, may still remain.

Given the nature of this opinion and order, the ZAI Claimants feel that

> To the extent the Bankruptcy Court's Memorandum Opinion and Order
> may be read to undermine the viability of some aspects of the ZAI claims,
> they may significantly impede any progress toward achieving consensual
> resolution among the key constituencies in the Debtors' bankruptcy.

But this certainly falls short of exceptional circumstances to warrant review of an

interlocutory order. Moreover, ZAI Claimants have not pointed out a controlling question of

law.

First, ZAI argues that the court disregarded the summary judgment standard, but

my reading of the court's opinion is that the standards were not only enunciated in the opinion

but followed by the court.

Secondly, and perhaps the single most important argument as to why an appeal

should be granted is that the court's decision involved a controlling question of law as to which

there is substantial ground for difference of opinion.

It is the Claimants' position that there is extensive precedent establishing that the

definitive issue is whether the building is contaminated by asbestos fibers. The court discussed

this issue under 2. No Safe Threshold Argument beginning at page 18 of the opinion and framed

claimant's position as follows: "Claimants argue that the substantial and unreasonable risk of

harm is the release of toxic substances into the environment alone, regardless of the levels
released and thus that the ZAI product is unsafe."

Debtor's position is: "that *Greenville*, and other cases cited herein, do not hold
that a plaintiff may recover damages without proof that the product creates an unreasonable risk
of harm."

The problem with ZAI Claimants' argument is that they cannot point to any case
that states that the release of toxic substances alone, regardless of levels, is sufficient. City of
Greenville v. W.R. Grace & Co., 827 F.2d 975 (4th Cir. 1987) is the case chiefly cited in support
of ZAI's position. My reading of this case suggests that the Bankruptcy Court's opinion did not
involve a question of law where there is substantial ground for disagreement. Greenville, in
footnote 2, indeed suggests that the testimony, contrary to Grace's contention in that case could
reasonably support a jury finding that the levels of contamination posed significant health risks
for building occupants. The opinion simply does not stand for the proposition that ZAI
Claimants argue.

Failing to show exceptional circumstances and to meet the 28 U.S.C. § 1292(b)
standards result in the following order:

AND NOW, this 26th day of March, 2007, it is hereby **ORDERED** that
Claimant's motion for leave to appeal Bankruptcy Court's order entered December 14, 2006 is
**DENIED.**

BY THE COURT:

RONALD L. BUCKWALTER, S.J.

3

ATTACHMENT

B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

- - -

IN RE:                          : CIVIL ACTION NO. 06-689
                                :
                                :
                                :
                                :
                                :
                                :
                                :
                                : Philadelphia, Pennsylvania
W.R. GRACE & COMPANY,           : March 5, 2007
et al.                          : 4:02 p.m.

- - -

TRANSCRIPT OF HEARING
BEFORE THE HONORABLE RONALD L. BUCKWALTER
UNITED STATES DISTRICT JUDGE

- - -

APPEARANCES:

For the Debtor:        DAVID M. BERNICK, ESQUIRE
W.R. Grace             Kirkland & Ellis LLP
& Co., et al:          Citigroup Center
                       153 East 53rd Street
                       New York, NY   10022


For the                EDWARD J. WESTBROOK, ESQUIRE
ZAI Claimants:         Richardson, Patrick,
                       Westbrook, Brinkman, LLC
                       1037 Chuck Dawley Boulevard
                       Building A
                       P.O. Box 1007
                       Mount Pleasant, SC   29464

10

on Grace, because it is trying to reorganize, because they have been six years at, but they talk about the burden.  They will have to file one brief, and come to oral argument, if the Court so desires.

Your Honor, we do not think that, that is such a burden on the debtor, or is going to so interfere with the bankruptcy process, that it carries much weight, if at all, against the damage that will be done.  Not, simply to the ZAI claimants, but to the whole process of reorganization.

If we go ahead based on this order, and claims are either dismissed by the Bankruptcy Court, or Mr. Bernick, who is pronounced, and Grace who is pronounced, the ZAI claims now, may be essentially worth nothing.

If they negotiate a plan with other creditors, divvy up the pie, and leave the ZAI claimants out, a claim which could be worth millions or billions, then we go and we have to have an appeal. Afterwards, we undo the whole thing.

THE COURT:    Well, of course that is true, except that many times you get a decision against you, and a partial summary judgment motion, or something is clearly interlocutory, and then you proceed to attempt to resolve the case in light of that existing opinion.

attics with ZAI ten percent of the time that they were
working in homes.        Grace's own contractor, Mr.
Van Kura (ph) testified he goes into a attic twenty
percent of his times.

         Her risk assessment was riddled with
problems, and the contrary assumptions based in the
record changed her numbers dramatically so that the
risk numbers went up dramatically, but none of it is
discussed in the Bankruptcy Court's order, Your Honor,
  that's the problem with the record itself.

         Now, what was wrong with the way she did
something?   Well, starting from where I started out,
Mr. Bernick has still not given you the citation to any
other state or federal trial court that has ever said
I, in the black robes, can take on this mantle of
deciding what's an unreasonable risk.        He says
well, we're saying any risk is unreasonable.

         What we're saying, Your Honor --

         THE COURT:   And you're not saying it, are
you?

         MR. WESTBROOK:   No.   What we're saying,
Your Honor, is that the risk --

         THE COURT:   ˙Because I think a judge can say
under some circumstances as a matter of law there's no
unreasonable risk here.

48

MR. BERNICK:    We're familiar with that, and
actually I was going to start with that, but then it --
that is, you know, I guess at the end of the day, that
is the 1292 standard that kind of has the most, you
know, the most interest and probably importance to it,
but we still have to cover the law and understand the
law, and that's why I think Your Honor properly pointed
out that we should begin with the law.

I guess I have four facts to put before Your
Honor to deal with this other matter, and I'm just
going to list them here one by one, and they're all
historical facts, historical facts about the case.

Number one:    ZAI was not the reason the
Chapter 11 case was filed.    They make it seem like
they're the big guys in the room, they're not the
reason the case is filed.    There have been no prior
findings in any context of liability on a single ZAI
claim before this Chapter 11 was filed.

In fact, the only litigation that had come to
a decision prior to the filing of the Chapter 11 case,
was a preliminary injunction proceeding that was
brought in the state of Washington where the plaintiffs
lost and the preliminary injunction was denied.

The liability that drove the filing of this
Chapter 11 was personal injury liability.    From

head.

But, Your Honor, if the bankruptcy plan gets negotiated, and either we are not considered adequately or the Bankruptcy Court dismisses claims and we're left out and we turn out to be right, then this whole bankruptcy plan will have to be redone, and after six years, who wants that versus one brief and thirty minutes of oral argument.

The legislative history of 129 -- 1292 says that extraordinary circumstances exist when, "Extended and expensive proceedings probably can be avoided."

That's the hearings on HR 6238 in the 85th Congress.     Your Honor, that's what we're trying to do, avoid the extended and expensive proceedings of going through the rest of this bankruptcy with ZAI shoved to the side and then find out we were right.

In the Chase Manhattan Bank case, Your Honor, which is 324 F.Supp. 2d. 540, District of Delaware, 2004, the District Court said where "Immediate appeal has the potential to greatly conserve the resources of the judiciary and the parties, extraordinary circumstances exist."

Your Honor, we have that situation here. Mr. Bernick said ZAI will not move the needle.   Your Honor, that's a very optimistic view of their position

62

on ZAI.

Let's say that Dr. Anderson was right that
there are only nine hundred and sixty thousand homes,
let's call it a million so I can do the math, and let's
say it's at the low end of the removal scale, just
three thousand dollars a home.   Three thousand times a
million is a three billion dollar claim.

It may not move the needle, but that's got to
be a pretty thick needle not to be moved, Your Honor.
We've got a big potential claim out there, and if that
claim is left out on the basis of this opinion --

THE COURT:   His point was that it was
relevantly small compared to the --

MR. WESTBROOK:   I don't think so, Your
Honor, I think --

THE COURT:   You don't think so?

MR. WESTBROOK:   I think the PI claims are in
the single billion digits.   I mean, I think we're the
same order of magnitude.

THE COURT:   Okay.

MR. WESTBROOK:   The reason PI -- he's so
concerned about PI, is PI has the 524(g) that unless
they agree to a plan he can't get out of bankruptcy.
I mean, that's certainly true.

Your Honor, I mentioned about Daubert, I

# ATTACHMENT

# C

Ex 43

# ZONOLITE ATTIC INSULATION REPORT

Prepared by:

Richard Hatfield
Senior Consultant
And
William E. Longo, Ph.D.
President

Materials Analytical Services, Inc.
3945 Lakefield Court
Suwanee, Georgia 30024

## RESULTS OF DUST TESTING IN HOMES WITH ZAI

Dust samples were collected from various homes with ZAI and the results are set forth below:

### DUST SAMPLE RESULTS FROM VARIOUS HOMES

| Sample Locations | Asb. Str./ft$^2$ | Asb. Str/cm$^2$ |
|---|---|---|
| Mason Home (Libby) | | |
| Floor of Atticapartment storage area | 32.7 million | 35.2 thousand |
| From unused rolled sheet metal in attic | 10.2 million | 10.9 thousand |
| | | |
| Spencer Home (Libby) | | |
| light dust from children's bedroom closet | 399.7 thousand | 430.3 hundred |
| medium dust from child's game in closet | 6.4 million | 6.9 thousand |
| heavy dust from shelf support in closet | 17.3 million | 18.6 thousand |
| | | |
| Walker Home | | |
| walk boards in attic | 41.1 million | 44.2 thousand |
| wooden steps of attic access ladder | 22.8 million | 24.6 thousand |
| | | |
| Loehner Home | | |
| dust on attic floor near stair case | 195.6 million | 210.5 thousand |
| dust from attic flooring in attic wing | 13.9 million | 14.9 thousand |
| | | |
| Salibury Home (Moscow, Idaho) | | |
| Daughter's bedroom closet off cabinet glass door | 37.4 million | 40.2 thousand |
| Daughter's bedroom closet off the floor | 6.2 million | 6.7 thousand |
| Dust from carpet in office closet | 5.2 million | 5.6 thousand |
| | | |
| Matthews Home (Spokane, WA) | | |
| Attic Floor (ZAI in perimeter only) | 24.9 million | 26.9 thousand |
| Carpet on attic floor (ZAI in perimeter only) | 2.8 million | 3.0 thousand |
| on wooden storage box in attic (ZAI in perimeter only) | none detected | none detected |
| | | |
| Home Silver Spring, MD | | |
| South end of attic off walk boards | 92.2 million | 99.2 thousand |
| North center from walk boards | 31.8 million | 34.2 thousand |
| Attic center off board at access stairs | 89.7 million | 96.6 thousand |
| South end of attic dust under vermiculite pile on walk boards | 1.8 billion | 1.9 million |

## DUST SAMPLE RESULTS FROM VARIOUS HOMES
*Continued*

| Sample Locations | Asb. Str./ft$^2$ | Asb. Str/cm$^2$ |
|---|---|---|
| **Barbanti Home (Spokane, WA)** | | |
| Dust from under vermiculite | 46.8 million | 50.3 thousand |
| | | |
| **Dillion Home** | | |
| Attic surfaces after home removal 1 | 943.6 million | 1.0 million |
| Attic surfaces after home removal 2 | 741.7 million | 798.4 thousand |
| Attic surfaces after home removal 3 | 150.7 million | 162.2 thousand |
| Attic surfaces after home removal 4 | 45.4 million | 48.8 thousand |
| Attic surfaces after home removal 5 | 32.4 million | 34.8 thousand |
| Attic surfaces after home removal 6 | 10.3 million | 111.0 thousand |
| | | |
| **MacCready Home** | | |
| Attic dust under ZAI 1 | 561.2 million | 604.1 thousand |
| Attic dust under ZAI 2 | 845.6 million | 910.2 thousand |
| | | |
| **Bush Home** | | |
| BD-01 | 47.2 million | 50.8 thousand |
| BD-02 | ND | ND |
| BD-3 | 191.0 million | 205.6 thousand |
| | | |
| **Matthews Home** | | |
| MD- 1 | 6.3 million | 6.7 thousand |
| MD- 2 | 35.4 million | 38.1 thousand |
| MD- 3 | ND | ND |
| MD- 4 | 18.5 million | 20.0 thousand |
| MD- 5 | ND | ND |
| MD- 6 | ND | ND |
| MD- 7 | ND | ND |
| MD- 8 | ND | ND |
| MD- 9 | ND | ND |
| MD- 10 | ND | ND |
| MD- 11 | 626.3 thousand | 0.7 thousand |
| MD- 12 | 309.1 thousand | 0.3 thousand |
| MD- 13 | | |
| MD- 14 | | |
| | | |
| **Price Home** | | |
| Garage above stairwell to basement | ND | ND |
| Garage off door mat | ND | ND |
| Kitchen off door mat to garage | ND | ND |
| Garage from intake for fireplace | ND | ND |
| | | |
| **Holbrook Home** | | |
| Attic off joist | 280.6 million | 302.0 thousand |
| Attic top of chest | ND | ND |
| Attic dust from hand railing around staircase | 821.2 thousand | 0.9 thousand |

ND = None Detected

ATTACHMENT

D

. REP. 85-2434, S. Rep. No. 2434, 85TH Cong., 2ND Sess. 1958, 1958 U.S.C.C.A.N. 5255, 1958 WL 3723 (Leg.Hist.)

*5255 P.L. 85-919, COURTS OF APPEALS-- INTERLOCUTORY ORDERS--
JURISDICTION
SENATE REPORT NO. 85-2434,
AUG. 18, 1958 (TO ACCOMPANY H.R. 6238)
HOUSE REPORT NO. 85-1667,
APR. 29, 1958 (TO ACCOMPANY H.R. 6238)
THE SENATE REPORT IS SET OUT.

(CONSULT NOTE FOLLOWING TEXT FOR INFORMATION ABOUT OMITTED MATERIAL. EACH
COMMITTEE REPORT IS A SEPARATE DOCUMENT ON WESTLAW.)

SENATE REPORT NO. 85-2434
AUG. 18, 1958

THE COMMITTEE ON THE JUDICIARY, TO WHICH WAS REFERRED TO BILL (H.R. 6238) TO AMEND SECTION 1292 OF TITLE 28 OF THE U.S.C. RELATING TO APPEALS FROM INTERLOCUTORY ORDERS, HAVING CONSIDERED THE SAME, REPORTS FAVORABLY THEREON, WITHOUT AMENDMENT, AND RECOMMENDS THAT THE BILL DO PASS.

PURPOSE

THE PURPOSE OF THE PROPOSED LEGISLATION IS TO PERMIT THE UNITED STATES COURTS OF APPEALS TO ENTERTAIN JURISDICTION OF CERTAIN INTERLOCUTORY ORDERS WHERE THE DISTRICT JUDGE IN MAKING THE ORDER HAS STATED THAT THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION, AND THAT AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

STATEMENT

SECTION 1292 OF TITLE 28, U.S.C. PROVIDES THAT THE UNITED STATES COURTS OF APPEALS SHALL HAVE JURISDICTION OF APPEALS INVOLVING INTERLOCUTORY ORDERS IN FOUR INSTANCES. THE INTERLOCUTORY ORDERS OF THE DISTRICT COURTS OF THE UNITED STATES AND THE TERRITORIAL COURTS ARE APPEALABLE UPON THE GRANTING, CONTINUING, MODIFYING, REFUSING, OR DISSOLVING OF INJUNCTIONS, OR REFUSING TO DISSOLVE OR MODIFY INJUNCTIONS, EXCEPT IN THOSE INSTANCES WHERE A DIRECT REVIEW MAY BE HAD IN THE SUPREME COURT OF THE UNITED STATES. INTERLOCUTORY ORDERS INVOLVING THE APPOINTMENT OF RECEIVERS OR THE REFUSING OF ORDERS TO WIND UP RECEIVERSHIPS, OR INVOLVING STEPS TO ACCOMPLISH THESE PURPOSES, SUCH AS DIRECTING SALES OR OTHER DISPOSALS OF PROPERTY, ARE LIKEWISE APPEALABLE. INTERLOCUTORY DECREES OF THE DISTRICT COURTS DETERMINING THE RIGHTS AND LIABILITIES OF THE PARTIES IN ADMIRALTY CASES ARE ALSO APPEALABLE WHERE, IN SUCH CASES, APPEALS FROM FINAL DECREES ARE ALLOWED. INTERLOCUTORY ORDERS ARE ALSO APPEALABLE IN CIVIL ACTIONS FOR PATENT INFRINGEMENT WHICH ARE FINAL EXCEPT FOR ACCOUNTING.

H.R. 6238 WOULD PLACE THE EXISTING PROVISIONS OF SECTION 1292 IN SUBSECTION (A) OF THAT SECTION, AND WOULD ADD A NEW SUBSECTION (B), BY VIRTUE OF WHICH IT WOULD BE POSSIBLE FOR A DISTRICT JUDGE IN A CIVIL ACTION TO MAKE AN ORDER NOT OTHERWISE APPEALABLE UNDER SECTION 1292 SUBJECT TO APPEAL BY STATING IN WRITING IN HIS ORDER INVOLVES A CONTROLLING QUESTION

OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION, AND THAT AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION. FOLLOWING THE ISSUANCE OF SUCH *5256 A WRITTEN STATEMENT, AS A PART OF THE COURT'S ORDER, THE LITIGANT MAY MAKE APPLICATION TO THE COURT OF APPEALS WITHIN 10 DAYS AFTER THE ENTRY OF THE ORDER TO PERMIT AN APPEAL THEREFROM. IF THE LITIGANT MAKES APPLICATION TO THE COURT OF APPEALS FOR A REVIEW OF SUCH AN ORDER, THE COURT MAY, IN ITS DISCRETION, PERMIT THE APPEAL. HOWEVER, THE APPLICATION FOR AN APPEAL PURSUANT TO THE PROVISIONS OF THIS AMENDMENT DOES NOT STAY PROCEEDINGS IN THE DISTRICT COURT UNLESS THE DISTRICT JUDGE, THE COURT OF APPEALS, OR A JUDGE THEREOF, SHALL SO ORDER.

THIS LEGISLATION RESULTS FROM A CONSIDERABLE STUDY BY COMMITTEES OF THE JUDICIAL CONFERENCE. THE LEGISLATION ITSELF WAS INTRODUCED AT THE REQUEST OF THE ADMINISTRATIVE OFFICE OF THE UNITED STATES COURTS PURSUANT TO THE DIRECTION OF THE JUDICIAL CONFERENCE OF THE UNITED STATES. THE JUDICIAL CONFERENCE IS COMPOSED OF THE CHIEF JUDGES OF THE CIRCUIT COURTS OF APPEALS OF THE UNITED STATES, A DISTRICT JUDGE FROM EACH CIRCUIT, AND THE CHIEF JUDGE OF THE UNITED STATES COURT OF CLAIMS. THE BILL RESULTS FROM A GROWING AWARENESS OF THE NEED FOR EXPEDITION OF CASES PENDING BEFORE THE DISTRICT COURTS. MANY CASES WHICH ARE FILED IN THE FEDERAL DISTRICT COURTS REQUIRE THE DISTRICT JUDGE TO ENTERTAIN MOTIONS AT AN EARLY STAGE IN THE PROCEEDINGS WHICH, IF DETERMINED, AGAINST THE PLAINTIFF, RESULT IN A FINAL ORDER WHICH WOULD THEN BE APPEALABLE TO THE CIRCUIT COURTS OF APPEALS OF THE UNITED STATES. HOWEVER, SUCH MOTIONS, IF DETERMINED IN THE PLAINTIFF'S FAVOR, ARE INTERLOCUTORY SINCE THEY DO NOT END THE LITIGATION AND ARE NOT THEREFORE, UNDER EXISTING PROVISIONS OF LAW, APPEALABLE. FOR EXAMPLE, IN A RECENT CASE A MOTION TO DISMISS FOR WANT OF JURISDICTION WAS FILED IN THE DISTRICT COURT EARLY IN THE PROCEEDINGS. THE DISTRICT COURT DENIED THE MOTION AND THE MATTER THEN PROCEEDED TO TRIAL. THE DISPOSITION OF THAT CASE TOOK ALMOST 8 MONTHS. UPON FINAL ORDER THE CASE WAS APPEALED AND THE COURT OF APPEALS DETERMINED THAT THE DISTRICT COURT DID NOT HAVE JURISDICTION AND ENTERED AN ORDER ACCORDINGLY. HAD THIS LEGISLATION BEEN IN EFFECT AT THAT TIME, THE DISTRICT JUDGE COULD HAVE STATED IN WRITING HIS OPINION THAT THE MOTION WAS CONTROLLING AND THE DEFENDANT COULD THEREUPON HAVE MADE APPLICATION TO THE COURT OF APPEALS FOR A REVIEW OF THE ORDER DENYING THE MOTION. HAD THE COURT OF APPEALS ENTERTAIN SUCH A MOTION AND REACHED THE CONCLUSION WHICH IT ULTIMATELY DID, IT WOULD HAVE RESULTED IN A SAVING OF THE TIME OF THE DISTRICT COURT AND CONSIDERABLE EXPENSES ON THE PART OF THE LITIGANTS.

THERE ARE MANY CIVIL ACTIONS FROM WHICH SIMILAR ILLUSTRATIONS COULD BE FURNISHED. FOR EXAMPLE, IN AN ANTITRUST ACTION A PLEA MAY BE ENTERED THAT THE CLAIM IS BARRED BY THE STATUTE OF LIMITATIONS. IF THIS MOTION IS DENIED, UNDER EXISTING LAW THE MATTER IS NOT APPEALABLE AND THE CASE THEN GOES FORWARD TO TRIAL. DISPOSITION OF ANTITRUST CASES MAY TAKE CONSIDERABLE TIME, YET UPON APPEAL FOLLOWING FINAL DISPOSITION OF SUCH CASES, THE COURT OF APPEALS MAY WELL DETERMINE THAT THE STATUTE OF LIMITATIONS HAD RUN AND FOR THAT REASON THE DISTRICT COURT DID NOT HAVE JURISDICTION.

ANOTHER INSTANCE IN WHICH THE PROVISIONS OF THIS BILL MIGHT PROVE USEFUL IS WHERE THE LITIGANT DESIRES TO JOIN A THIRD PARTY DEFENDANT. AT PRESENT, THERE IS NO APPEAL FROM AN ORDER JOINING A THIRD PARTY DEFENDANT OR REFUSING TO DO SO. THE INSTANT LEGISLATION WOULD PERMIT SUCH AN APPEAL WITHIN THE LIMITATIONS PREVIOUSLY PRESCRIBED.

THESE EXAMPLES GIVE SOME INDICATION OF THE DESIRABILITY OF THIS LEGISLATION. HOWEVER, WHILE IT MAY BE DESIRABLE TO PERMIT APPEALS FROM ANY INTERLOCUTORY *5257 ORDER IN CERTAIN INSTANCES, THE INDISCRIMINATE USE OF SUCH AUTHORITY MAY RESULT IN DELAY RATHER THAN EXPEDITION OF CASES IN THE

DISTRICT COURTS. OBVIOUSLY, SUCH APPEALS SHOULD NOT BE ALLOWED IF THEY ARE FILED SOLELY FOR THE PURPOSE OF DELAY OR ARE BASED UPON SPURIOUS GROUNDS. IN ORDER TO ELIMINATE SUCH APPEALS THE BILL IS CAST IN SUCH A WAY THAT THE APPEAL IS DISCRETIONARY RATHER THAN A MATTER OF RIGHT. IT IS DISCRETIONARY IN THE FIRST INSTANCE WITH THE DISTRICT JUDGE FOR HE MUST STATE IN WRITING AS A PART OF HIS ORDER THAT IT IS HIS OPINION THAT THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW CONCERNING WHICH THERE IS SUBSTANTIAL DOUBT AND HE MUST FURTHER STATE THAT AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION.

THE APPLICATION FOR SUCH AN APPEAL IS ALSO DISCRETIONARY WITH THE LITIGANT SINCE HE MUST MAKE THE APPLICATION, THOUGH IT IS CONSIDERED LIKELY THAT, UPON THE ISSUANCE OF SUCH A STATEMENT IN AN ORDER BY THE DISTRICT JUDGE, COUNSEL WOULD ORDINARILY FILE SUCH AN APPLICATION WITH THE APPROPRIATE CIRCUIT COURT OF APPEALS.

THE GRANTING OF THE APPEAL IS ALSO DISCRETIONARY WITH THE COURT OF APPEALS WHICH MAY REFUSE TO ENTERTAIN SUCH AN APPEAL IN MUCH THE SAME MANNER THAT THE SUPREME COURT TODAY REFUSES TO ENTERTAIN APPLICATION FOR WRITS OF CERTIORARI.

IT SHOULD BE MADE CLEAR THAT IF APPLICATION FOR AN APPEAL FROM AN INTERLOCUTORY ORDER IS FILED WITH THE COURT OF APPEALS, THE COURT OF APPEALS MAY DENY SUCH AN APPLICATION WITHOUT SPECIFYING THE GROUNDS UPON WHICH SUCH A DENIAL IS BASED. IT COULD BE BASED UPON A VIEW THAT THE QUESTION INVOLVED WAS NOT A CONTROLLING ISSUE. IT COULD BE DENIED ON THE BASIS THAT THE DOCKET OF THE CIRCUIT COURT OF APPEALS WAS SUCH THAT THE APPEAL COULD NOT BE ENTERTAINED FOR TOO LONG A PERIOD OF TIME. BUT, WHATEVER THE REASON, THE ULTIMATE DETERMINATION CONCERNING THE RIGHT OF APPEAL IS WITHIN THE DISCRETION OF THE JUDGES OF THE APPROPRIATE CIRCUIT COURT OF APPEALS.

ANOTHER PROTECTION AGAINST DELAY WHICH IS CONTAINED IN THIS LEGISLATION IS THE PROVISION WHICH REQUIRES A LITIGANT TO MAKE APPLICATION WITHIN 10 DAYS AFTER THE ENTRY OF THE ORDER IF HE DESIRES TO TAKE SUCH AN APPEAL. A FURTHER PROTECTION AGAINST DELAY IS CONTAINED IN THE PROVISION WHICH REQUIRES THAT APPLICATION FOR AN APPEAL PURSUANT TO THIS LEGISLATION WILL NOT STAY PROCEEDINGS IN THE DISTRICT COURT UNLESS SUCH A STAY IS ORDERED BY THE DISTRICT JUDGE, THE COURT OF APPEALS, OR A JUDGE THEREOF.

THE COMMITTEE BELIEVES THAT THIS LEGISLATION CONSTITUTES A DESIRABLE ADDITION TO THE EXISTING AUTHORITY TO APPEAL FROM INTERLOCUTORY ORDERS OF THE DISTRICT COURTS OF THE UNITED STATES. IT HAS BEEN A MATTER OF CONSIDERABLE NOTORIETY THAT MANY OF THE DISTRICT COURTS OF THE UNITED STATES HAVE A SUBSTANTIAL BACKLOG OF CASES. SOME OF THESE BACKLOGS ARE SO SEVERE AS TO REQUIRE LITIGANTS TO AWAIT TRIAL FOR A PERIOD UP TO 4 YEARS. THE SUBSTANTIAL DELAY IN THE TRIAL OF SUCH CASES MAY OFTEN RESULT IN A DENIAL OF JUSTICE. ANY LEGISLATION, THEREFORE, APPROPRIATELY SAFEGUARDED, WHICH MIGHT AID IN THE DISPOSITION OF CASES BEFORE THE DISTRICT COURTS OF THE UNITED STATES BY SAVING USELESS EXPENDITURE OF COURT TIME IS SUCH AS TO REQUIRE THE APPROBATION OF ALL THOSE DIRECTLY CONCERNED WITH THE ADMINISTRATION OF JUSTICE IN THE UNITED STATES. THE COMMITTEE BELIEVES THAT THIS IS SUCH A PROPOSAL AND THAT ITS UTILIZATION MAY WELL PROVE OF CONSIDERABLE BENEFIT IN THE DISPOSITION OF CASES BEFORE THE DISTRICT COURTS. THE COMMITTEE, HOWEVER, DESIRES TO POINT *5258 OUT THAT THE ULTIMATE SUCCESS OF A PROPOSAL SUCH AS THIS MUST, IN THE FINAL ANALYSIS, DEPEND UPON THE WISDOM OF THE JUDGES WHO MUST ADMINISTER IT, AND THE GOOD FAITH OF THE LITIGANTS WHO UTILIZE IT. IF THE DISCRETION WHICH THIS LEGISLATION AFFORDS IS PROPERLY USED, THE PROCEDURES OF THIS LEGISLATION SHOULD RESULT IN IMPROVING THE ADMINISTRATION OF JUSTICE

WITHIN THE FEDERAL COURT SYSTEM. FOR THESE REASONS, THE COMMITTEE
BELIEVES THAT THE LEGISLATION IS DESIRABLE AND SHOULD BE FAVORABLY
CONSIDERED.

ATTACHED TO THIS REPORT IS THE LETTER WHICH ACCOMPANIED THE TRANSMITTAL
OF THIS PROPOSAL FROM THE ADMINISTRATIVE OFFICE OF THE UNITED STATES
COURTS. ALSO APPENDED IS THE REPORT OF THE COMMITTEE ON APPEALS FROM
INTERLOCUTORY ORDERS OF THE DISTRICT COURTS SUBMITTED TO THE CHIEF
JUSTICE OF THE UNITED STATES AND THE MEMBERS OF THE JUDICIAL CONFERENCE
UNDER DATE OF SEPTEMBER 23, 1953. ALSO APPENDED IS THE REPORT OF THE
COMMITTEE APPOINTED BY THE CHIEF JUDGE OF THE 10TH CIRCUIT COURT OF
APPEALS OF THE UNITED STATES, WHICH ADDRESSES ITSELF TO THIS SAME
PROBLEM.

ADMINISTRATIVE OFFICE OF THE
UNITED STATES COURTS
WASHINGTON, D.C., MARCH 15, 1957.
HON. SAM RAYBURN,
SPEAKER OF THE HOUSE OF REPRESENTATIVES,
WASHINGTON, D.C.

DEAR MR. SPEAKER: ON BEHALF OF THE JUDICIAL CONFERENCE OF THE UNITED
STATES I HEREWITH TRANSMIT FOR THE CONSIDERATION OF THE CONGRESS A DRAFT
OF A BILL TO AMEND SECTION 1292 OF TITLE 28 OF THE U.S.C. RELATING TO APPEALS
FROM INTERLOCUTORY ORDERS OF THE DISTRICT COURTS OF THE UNITED STATES.
THE PRESENT SECTION SPECIFIES THE KINDS OF INTERLOCUTORY ORDERS, DECREES,
OR JUDGMENTS FROM WHICH APPEALS ARE ALLOWED. THE ENCLOSED BILL WOULD
ADD A PROVISION THAT WHEN A DISTRICT JUDGE IN MAKING A CIVIL ACTION AN
ORDER NOT OTHERWISE APPEALABLE UNDER THE SECTION, SHALL BE OF THE
OPINION THAT THE ORDER INVOLVES A CONTROLLING QUESTION OF LAW AS TO
WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION AND THAT AN
IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE
TERMINATION OF THE LITIGATION HE SHALL SO STATE IN WRITING IN THE ORDER;
THAT THE COURT OF APPEALS MAY THEN IN ITS DISCRETION PERMIT AN APPEAL TO BE
TAKEN FROM THE ORDER IF APPLICATION IS MADE TO IT WITHIN 10 DAYS AFTER THE
ORDER IS ENTERED, BUT THAT APPLICATION FOR SUCH AN APPEAL SHALL NOT STAY
PROCEEDINGS IN THE DISTRICT COURT UNLESS THE DISTRICT JUDGE OR THE COURT
OF APPEALS OR A JUDGE OF THAT COURT SHALL SO ORDER.

THE MATTER OF APPEALS FROM INTERLOCUTORY ORDERS OF THE DISTRICT COURTS
WAS BROUGHT TO THE ATTENTION OF THE JUDICIAL CONFERENCE BY
COMMUNICATIONS RECEIVED AT ITS ANNUAL MEETING IN SEPTEMBER 1951 (PP. 32-33
OF THE SEPTEMBER 1951 REPORT). THE JUDICIAL CONFERENCE REFERRED THE
MATTER FOR STUDY AND REPORT TO A COMMITTEE TO BE DESIGNATED BY THE CHIEF
JUSTICE AND THE CHIEF JUSTICE APPOINTED AS SUCH A COMMITTEE CIRCUIT JUDGE
JOHN J. PARKER, OF NORTH CAROLINA, CHAIRMAN; CIRCUIT JUDGES SHACKELFORD
MILLER, JR., OF KENTUCKY; WAYNE G. BORAH, OF LOUISIANA; AND WALTER C.
LINDLEY, OF ILLINOIS; AND DISTRICT JUDGES PIERSON M. HAL, OF CALIFORNIA; CARL
A. HATCH, OF NEW MEXICO; ROY W. HARPER, OF MISSOURI; AND ERNEST W. GIBSON,
OF VERMONT.

IN THE AUTUMN OF 1952 JUDGE PARKER AS CHAIRMAN OF THE COMMITTEE SENT TO
ALL THE CIRCUIT AND DISTRICT JUDGES VARIOUS PROPOSALS FOR AMENDMENT OF
THE STATUTE IN REFERENCE TO APPEALS FROM INTERLOCUTORY ORDERS. EACH OF
THE PROPOSALS WOULD ENLARGE IN A DEGREE THE PRESENT PROVISION FOR SUCH
APPEALS. BUT THE LANGUAGE OF THE AMENDMENTS SUGGESTED *5259 AND THE
CONDITIONS ATTACHED TO THE ADDED RIGHT OF APPEAL IN THE PROPOSALS VARIED.
IN THIS SITUATION THE COMMITTEE AT A MEETING HELD IN THE WINTER OF 1953
DECIDED TO ASK THE CHIEF JUDGES OF ALL OF THE JUDICIAL CIRCUITS TO SCHEDULE
AS PART OF THE PROGRAMS OF THE JUDICIAL CONFERENCES OF THEIR CIRCUITS IN
THE YEAR 1953, A CONSIDERATION OF THE VARIOUS PROPOSALS. THAT WAS DONE

AND THE SUBJECT RECEIVED CONSIDERATION IN THE SPRING AND SUMMER OF 1953 AT JUDICIAL CONFERENCES HELD IN THE DISTRICT OF COLUMBIA CIRCUIT, AND IN THE 3D, 4TH, 5TH, 6TH, 7TH, 9TH, AND 10TH CIRCUIT.

THEREAFTER THE COMMITTEE RECOMMENDED TO THE JUDICIAL CONFERENCE, AT THE ANNUAL MEETING OF THAT BODY IN SEPTEMBER 1953, THE BILL NOW SUBMITTED. A COPY OF THE REPORT OF THE COMMITTEE, INCLUDING A COPY OF A REPORT ON THE SUBJECT OF A SPECIAL COMMITTEE OF THE 10TH CIRCUIT, AND A REPORT OF A COMMITTEE OF THE LOS ANGELES BAR ASSOCIATION WITH AN EXPLANATORY LETTER OF MR. J. E. SIMPSON OF THAT ASSOCIATION, IS ATTACHED. THE JUDICIAL CONFERENCE OF THE UNITED STATES, WITH JUDGE HAROLD M. STEPHENS, OF THE DISTRICT OF COLUMBIA CIRCUIT, SINCE DECEASED, AND JUDGE CALVERT MAGRUDER, OF THE FIRST CIRCUIT, VOTING IN OPPOSITION, APPROVED THE BILL RECOMMENDED BY THE COMMITTEE WHICH IS NOT SUBMITTED.

IT HAS ALWAYS BEEN RECOGNIZED THAT THERE ARE TWO COMPETING CONSIDERATIONS BEARING UPON APPEALS FROM INTERLOCUTORY ORDERS. ON THE ONE HAND TOO RIGID A BAR AGAINST SUCH APPEALS FROM INTERLOCUTORY ORDERS MAY RESULT IN INJUSTICE BY PREVENTING AT AN EARLY STAGE THE FINAL DECISION OF AN ISSUE WHICH MIGHT BE DETERMINATIVE OF THE CASE AND BURDENING THE PARTIES WITH THE EXPENSE OF SUBSEQUENT PROCEEDINGS, PERHAPS PROLONGED, TO NO AVAIL. ON THE OTHER HAND TOO GREAT FREEDOM IN TAKING APPEALS FROM ORDERS OF THE DISTRICT COURT PRIOR TO THE FINAL JUDGMENT, 'PIECEMEAL APPEALS' AS THEY ARE CALLED, MAY MAKE FOR DELAY AND INCREASE THE EXPENSE OF THE LITIGATION.

IT WAS THE OPINION OF THE COMMITTEE AND THE JUDICIAL CONFERENCE THAT THE ENCLOSED BILL, AS FINALLY APPROVED AFTER WEIGHING THE DIFFERENT DRAFTS, WILL ACCOMPLISH THE PURPOSE SOUGHT BY THE PROPONENTS OF SOME RELAXATION OF THE PRESENT PROVISION OF SECTION 1292 FOR INTERLOCUTORY APPEALS, AND AT THE SAME TIME AVOID DELAY IN THE FINAL DETERMINATION OF THE CASES. IN FACT IT IS THOUGH THAT THE BILL, IF ENACTED, WILL BE LIKELY TO EXPEDITE THE FINAL DETERMINATION.

SO THE COMMITTEE SAID IN ITS REPORT:

'YOUR COMMITTEE IS OF THE VIEW THAT THE APPEAL FROM INTERLOCUTORY ORDERS THUS PROVIDED SHOULD AND WILL BE USED ONLY IN EXCEPTIONAL CASES WHERE A DECISION OF THE APPEAL MAY AVOID PROTRACTED AND EXPENSIVE LITIGATION, AS IN ANTITRUST AND SIMILAR PROTRACTED CASES, WHERE A QUESTION WHICH WOULD BE DISPOSITIVE OF THE LITIGATION IS RAISED AND THERE IS SERIOUS DOUBT AS TO HOW IT SHOULD BE DECIDED, AS IN THE RECENT CASE OF AUSTRIAN V. WILLIAMS (2 CIR. 198 F.2D 697). IT IS NOT THOUGHT THAT DISTRICT JUDGES WOULD GRANT THE CERTIFICATE IN ORDINARY LITIGATION WHICH COULD OTHERWISE BE PROMPTLY DISPOSED OF OR THAT MERE QUESTION AS TO THE CORRECTNESS OF THE RULING WOULD PROMPT THE GRANTING OF THE CERTIFICATE. THE RIGHT OF APPEAL GIVEN BY THE AMENDATORY STATUTE IS LIMITED BOTH BY THE REQUIREMENT OF THE CERTIFICATE OF THE TRIAL JUDGE, WHO IS FAMILIAR WITH THE LITIGATION AND WILL NOT BE DISPOSED TO COUNTENANCE DILATORY TACTICS, AND BY THE RESTING OF FINAL DISCRETION IN THE MATTER IN THE COURT OF APPEALS, WHICH WILL NOT PERMIT ITS DOCKET TO BE CROWDED WITH PIECEMEAL OR MINOR LITIGATION.'

FOR THE REASONS STATED IT IS BELIEVED THAT THE PROPOSED AMENDMENT OF SECTION 1292 IS SOUND, THAT IT WILL RESULT IN BENEFIT TO LITIGANTS AND BE CONDUCIVE TO THE TIMELY DISPOSITION IN THE COURTS OF CASES AFFECTED. ACCORDINGLY I HOPE THAT IT MAY RECEIVE THE FAVORABLE CONSIDERATION OF THE CONGRESS AND IN DUE COURSE BE ENACTED.

SINCERELY YOURS,
ELMORE WHITEHURST,
ACTING DIRECTOR.

*5260* REPORT OF THE COMMITTEE ON APPEALS FROM INTERLOCUTORY ORDERS OF THE
DISTRICT COURTS

AGENDA NO 11

SEPTEMBER 23, 1953.
TO THE CHIEF JUSTICE OF THE UNITED STATES, CHAIRMAN, AND THE MEMBERS OF THE JUDICIAL CONFERENCE OF THE UNITED STATES:
IN MARCH OF THIS YEAR, YOUR COMMITTEE REPORTED TO THE CONFERENCE AT ITS SPECIAL SESSION THAT WE HAD CONTINUED OUR STUDY OF THE VARIOUS PROPOSALS THAT HAD BEEN MADE TO AMEND THE JUDICIAL CODE TO ENLARGE THE SCOPE OF APPEALS TO THE COURTS OF APPEALS FROM INTERLOCUTORY ORDERS OF THE DISTRICT COURTS, AND OF THE REACTIONS OF THE CIRCUIT AND DISTRICT JUDGE TO THOSE PROPOSALS. WE INFORMED THE CONFERENCE THAT WE HAD MET AT CHICAGO IN FEBRUARY 1953, BUT HAD TAKEN NO ACTION ON ANY OF THE PROPOSALS, AND THAT WE HAD CONCLUDED INSTEAD TO ASK THE CHIEF JUDGES OF EACH OF THE CIRCUITS TO SCHEDULE AS PART OF THE AGENDA FOR THE JUDICIAL CONFERENCES OF THEIR RESPECTIVE CIRCUITS A CONSIDERATION OF THE VARIOUS PROPOSALS THAT HAVE BEEN MADE IN RESPECT TO THE MATTER, AND TO APPOINT COMMITTEES TO STUDY AND REPORT TO THEIR CONFERENCES, OR TO ARRANGE FOR PANEL DISCUSSIONS OF THE PROBLEM BY LAWYERS AND JUDGES SELECTED BY THEM. THE CHAIRMAN OF YOUR COMMITTEE WROTE LETTERS TO EACH OF THE CHIEF JUDGES MAKING THIS REQUEST, AND SUPPLIES TO THEM COPIES OF THE VARIOUS COMMUNICATIONS CONTAINING SUGGESTIONS ON THE SUBJECT AND ABSTRACTS OF THE REPLIES OF THE VARIOUS CIRCUIT AND DISTRICT JUDGES TO THE COMMITTEE'S PREVIOUS REQUEST FOR THEIR VIEWS REGARDING THEM.
ACCORDINGLY, THE MATTER RECEIVED CONSIDERATION DURING THE SPRING AND SUMMER AT JUDICIAL CONFERENCES IN THE 3D, 4TH, 5TH, 6TH, 7TH, 9TH, 10TH, AND IN THE DISTRICT OF COLUMBIA CIRCUITS.
IN CONNECTION WITH THE LETTERS HERETOFORE RECEIVED FROM THE VARIOUS JUDGES WITH WHOM WE HAVE HAD CORRESPONDENCE, WE HAVE GIVEN CONSIDERATION TO THE ACTION TAKEN BY THE CIRCUIT CONFERENCES AND HAVE REACHED THE CONCLUSION THAT PROVISION SHOULD BE MADE FOR THE ALLOWANCE OF APPEALS FROM THE INTERLOCUTORY ORDERS IN THOSE EXCEPTIONAL CASES WHERE IT IS DESIRABLE THAT THIS BE DONE TO AVOID UNNECESSARY DELAY AND EXPENSES AND THAT THE DANGER OF OPENING THE DOOR TO GROUNDLESS APPEALS AND PIECEMEAL LITIGATION CAN BE AVOIDED BY PROPER LIMITATIONS TO BE INCLUDED IN THE AMENDATORY STATUTE. WE ACCORDINGLY PROPOSE THE FOLLOWING AMENDMENT TO SECTION 1292 OF TITLE 28 OF THE UNITED STATES CODE:
'SECTION 1292 OF TITLE 28 OF THE U.S.C. IS HEREBY AMENDED BY INSERTING OF THE LETTER (A) AT THE BEGINNING OF THE SECTION AND ADDING AT THE END THEREOF AN ADDITIONAL SUBPARAGRAPH LETTERED (B) TO READ AS FOLLOWS:
'(B) WHEN A DISTRICT JUDGE, IN MAKING IN A CIVIL ACTION AN ORDER NOT OTHERWISE APPEALABLE UNDER THIS SECTION, SHALL BE OF THE OPINION THAT SUCH ORDER INVOLVES A CONTROLLING QUESTION OF LAW AS TO WHICH THERE IS SUBSTANTIAL GROUND FOR DIFFERENCE OF OPINION AND THAT AN IMMEDIATE APPEAL FROM THE ORDER MAY MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION, HE SHALL SO STATE IN WRITING IN SUCH ORDER. THE COURT OF APPEALS MAY THEREUPON, IN ITS DISCRETION, PERMIT AN APPEAL TO BE TAKEN FROM SUCH ORDER, IF APPLICATION IS MADE TO IT WITHIN 10 DAYS AFTER THE ENTRY OF THE ORDER; PROVIDED, HOWEVER, THAT APPLICATION FOR AN APPEAL HEREUNDER SHALL NOT STAY PROCEEDINGS IN THE DISTRICT COURT UNLESS THE DISTRICT JUDGE OR THE COURT OF APPEALS OR A JUDGE THEREOF SHALL SO ORDER.'
YOUR COMMITTEE IS OF THE VIEW THAT THE APPEAL FROM INTERLOCUTORY ORDERS

THUS PROVIDED SHOULD AND WILL BE USED ONLY IN EXCEPTIONAL CASES WHERE A DECISION OF THE APPEAL MAY AVOID PROTRACTED AND EXPENSIVE LITIGATION, AS IN ANTITRUST AND SIMILAR PROTRACTED CASES, WHERE A QUESTION WHICH WOULD BE DISPOSITIVE OF THE LITIGATION IS RAISED AND THERE IS SERIOUS DOUBT AS TO HOW IT SHOULD BE DECIDED, AS IN THE RECENT CASE OF AUSTRIAN V. WILLIAMS (2 CIR. 198 F.2D 697). IT IS NOT THOUGHT THAT DISTRICT JUDGES WOULD GRANT THE CERTIFICATE IN ORDINARY LITIGATION WHICH COULD OTHERWISE BE *5261 PROMPTLY DISPOSED OF OR THAT MERE QUESTION AS TO THE CORRECTNESS OF THE RULING WOULD PROMPT THE GRANTING OF THE CERTIFICATE. THE RIGHT OF APPEAL GIVEN BY THE AMENDATORY STATUTE IS LIMITED BOTH BY THE REQUIREMENT OF THE CERTIFICATE OF THE TRIAL JUDGE, WHO IS FAMILIAR WITH THE LITIGATION AND WILL NOT BE DISPOSED TO COUNTENANCE DILATORY TACTICS, AND BY THE RESTING OF FINAL DISCRETION IN THE MATTER IN THE COURT OF APPEALS, WHICH WILL NOT PERMIT ITS DOCKET TO BE CROWDED WITH PIECEMEAL OR MINOR LITIGATION. WE ATTACH TO THIS REPORT A REPORT BY THE COMMITTEE OF THE 10TH CIRCUIT WHICH MADE A CAREFUL STUDY OF THE QUESTIONS INVOLVED AND DEALT WITH THEM IN A VERY ABLE MANNER. WE ATTACH ALSO A DIGEST OF THE CORRESPONDENCE WE HAVE HAD WITH JUDGES THROUGHOUT THE COUNTRY, WHICH DEMONSTRATES, WE THINK, THE WISDOM OF SOME SUCH LEGISLATION AS IS PROPOSED. A COMMITTEE OF THE LOS ANGELES BAR ASSOCIATION HAS MADE A REPORT TO JUDGE HALL MAKING SUGGESTIONS, A NUMBER OF WHICH HAVE BEEN ADOPTED. A COPY OF THAT REPORT IS ALSO ATTACHED.
SHACKELFORD MILLER, JR.,
WAYNE G. BORAH,
WALTER C. LINDLEY,
PEIRSON M. HALL,
CARL A. HATCH,
ROY W. HARPER,
ERNEST W. GIBSON,
JOHN J. PARKER, CHAIRMAN.
TO CHIEF JUDGE ORIE L. PHILLIPS AND MEMBERS OF THE JUDICIAL CONFERENCE OF THE 10TH CIRCUIT:
CHIEF JUDGE ORIE L. PHILLIPS APPOINTED A COMMITTEE COMPOSED OF CIRCUIT JUDGE JOHN C. PICKETT, DISTRICT JUDGE EDGAR S. VAUGHT, DISTRICT JUDGE EUGENE RICE, DISTRICT JUDGE DELMAS C. HILL, DISTRICT JUDGE ROYCE H. SAVAGE, GEORGE SIEFKIN, ESQ., OF WICHITA, KANS., AND RICHARD B. MCDERMOTT, ESQ., OF TULSA, OKLA., WITH INSTRUCTIONS TO MAKE A STUDY OF PROPOSALS FOR LEGISLATION TO AUTHORIZE THE UNITED STATES COURTS OF APPEALS IN THEIR DISCRETION TO ALLOW APPEALS FROM INTERLOCUTORY ORDERS OF UNITED STATES DISTRICT COURTS NOT NOW APPEALABLE, AND TO REPORT AT THE JUDICIAL CONFERENCE OF THE 10TH CIRCUIT ON JULY 16, 1953. THE COMMITTEE HAS MADE A CAREFUL STUDY OF THE SEVERAL STATUTORY CHANGES WHICH HAVE BEEN ADVANCED.
THE JUDICIAL CONFERENCE OF THE FOURTH CIRCUIT HAS APPROVED IN PRINCIPLE A PROPOSED CHANGE OF STATUTE WHICH WOULD PERMIT ALLOWANCE OF AN APPEAL FROM INTERLOCUTORY ORDERS NOT NOW APPEALABLE, AS FOLLOWS:
'THE COURT OF APPEALS MAY IN ITS DISCRETION PERMIT AN APPEAL TO BE TAKEN FROM AN INTERLOCUTORY ORDER OR JUDGMENT, WHEN IN THE OPINION OF THE COURT SUCH AN APPEAL WILL PROBABLY TERMINATE THE LITIGATION OR IS NECESSARY TO THE PROMPT OR EFFICIENT ADMINISTRATION OF JUSTICE.
APPLICATION FOR THE ALLOWANCE OF SUCH AN APPEAL SHALL BE ENTERTAINED ONLY IF THE DISTRICT JUDGE SHALL HAVE FILED A CERTIFICATE TO THE EFFECT THAT IN HIS OPINION THE APPEAL SHOULD BE ALLOWED AND APPLICATION THEREFOR IS MADE TO THE APPELLATE COURT WITHIN 10 DAYS OF THE ENTRY OF THE INTERLOCUTORY ORDER OR JUDGMENT APPEALED FROM.'
CIRCUIT JUDGE CHARLES E. CLARK OBJECTS TO THE BROAD LANGUAGE OF THE

PROPOSED STATUTE ALLOWING THE COURT OF APPEALS TO TAKE THE APPEAL IF 'NECESSARY TO THE PROMPT OR EFFICIENT ADMINISTRATION OF JUSTICE.' HE SUGGESTS A MORE RESTRICTED STATUTE IN THE FOLLOWING TERMS:
'WHEN A DISTRICT JUDGE, IN ENTERING AN ORDER OF AN INTERLOCUTORY NATURE, SHALL BE OF THE OPINION THAT AN IMMEDIATE APPEAL FROM THE ORDER WILL PROBABLY TERMINATE OR MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION HE SHALL SO STATE IN HIS ORDER. THE COURT OF APPEALS MAY THEN IN ITS DISCRETION PERMIT AN APPEAL TO BE TAKEN FROM SUCH ORDER IF APPLICATION IS MADE TO IT WITHIN 10 DAYS AFTER THE ENTRY OF THE ORDER.'
CIRCUIT JUDGE JEROME FRANK OPPOSES THE PROVISION MAKING THE APPEAL CONTINGENT UPON PROCUREMENT OF A CERTIFICATE FROM THE DISTRICT JUDGE AND ADVOCATED THE FOLLOWING SUBSTITUTE:
*5262 'IT SHALL BE THE DUTY OF THE DISTRICT JUDGE TO STATE IN WRITING WHETHER IN HIS OPINION THE APPEAL IS WARRANTED; THIS STATEMENT SHALL BE APPENDED TO THE PETITION FOR APPEAL OR, AS PROMPTLY AS POSSIBLE AFTER THE FILING OF SUCH PETITION IN THE COURT OF APPEALS, SHALL BE FORWARDED TO SAID COURT BY THE DISTRICT JUDGE. THE COURT OF APPEALS SHALL TAKEN INTO ACCOUNT, BUT SHALL NOT BE BOUND BY, SUCH STATEMENT IN EXERCISING ITS DISCRETION.'
CIRCUIT JUDGE JOHN B. SANBORN HAS SUGGESTED A STATUTE MUCH LIKE THAT ADVOCATED BY JUDGE FRANK WITH A FURTHER PROVISION THAT, PENDING THE DISPOSITION OF AN APPLICATION TO A COURT OF APPEALS FOR ALLOWANCE OF AN APPEAL, THE PROCEEDINGS IN THE DISTRICT COURT SHALL NOT BE STAYED UNLESS THE DISTRICT JUDGE WHO ENTERED THE ORDER OR THE COURT OF APPEALS SHALL SO DIRECT.
CHIEF JUDGE HAROLD M. STEPHENS, OF THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA, HAS WRITTEN AT SOME LENGTH ON THE SUBJECT AND VIGOROUSLY OPPOSES THE ENACTMENT OF ANY LEGISLATION WHICH WOULD PERMIT APPEALS FROM INTERLOCUTORY ORDERS NOT PRESENTLY APPEALABLE.
THE COMMITTEE UNANIMOUSLY APPROVES IN PRINCIPLE THE PROPOSES STATUTE SUGGESTED BY JUDGE CHARLES E. CLARK. IT IS OUR OPINION THAT ANOTHER DRAFT OF THE STATUTE SHOULD BE PREPARED TO ACCOMPLISH THE OBJECTIVE BY USE OF MORE APPROPRIATE LANGUAGE. IT HAS BEEN POINTED OUT, FOR INSTANCE, THAT IF A DISTRICT JUDGE DESIRED TO ALLOW AN IMMEDIATE APPEAL FROM AN ORDER OVERRULING A MOTION TO DISMISS OR AN OBJECTION TO THE JURISDICTION, THE REQUIREMENT THAT HE STATE THAT SUCH APPEAL WOULD 'PROBABLY TERMINATE OR MATERIALLY ADVANCE THE ULTIMATE TERMINATION OF THE LITIGATION' WOULD COMPEL THE EXPRESSION OF AN OPINION THAT HE WOULD PROBABLY BE REVERSED. AS THE PHRASE 'MATERIALLY ADVANCE THE ULTIMATE TERMINATION' MUST INCLUDE THE MORE LIMITED 'PROBABLY TERMINATE' IT APPEARS THAT THE LATTER LANGUAGE MAY BE DELETED WITHOUT DAMAGE TO INTENT, AND THE SUGGESTED ANOMALY IS AVOIDED. ADDITIONAL OR OTHER LANGUAGE MAY BE DESIRABLE, AND THE COMMITTEE'S ACTION IS NOT CONDITIONED UPON ANY SPECIFIC TEXT.
OUR RECOMMENDATION IS FOUNDED UPON THE PREMISE THAT THE ENLARGEMENT OF THE RIGHT OF APPEAL SHOULD BE LIMITED TO EXTRAORDINARY CASES IN WHICH EXTENDED AND EXPENSIVE PROCEEDINGS PROBABLY CAN BE AVOIDED BY IMMEDIATE FINAL DECISION OF CONTROLLING QUESTIONS ENCOUNTERED EARLY IN THE ACTION. THE SHORTENING OF THE PERIOD BETWEEN COMMENCEMENT OF AN ACTION AND ITS ULTIMATE TERMINATION, TOGETHER WITH AVOIDANCE OF UNNECESSARY WORK AND EXPENSE, ARE THE IMPERATIVE CONSIDERATIONS WHICH IMPEL THE COMMITTEE'S RECOMMENDATION FOR CHANGE IN THE EXISTING LAW.
WE ARE AGREED THAT INSTANCES IN WHICH AN EARLY REVIEW WILL EFFECT SUBSTANTIAL SAVINGS IN TIME AND EXPENSE OCCUR WITH SUFFICIENT FREQUENCY TO WARRANT SPECIAL RECOGNITION IN PROCEDURAL LAW. WE ALSO RECOGNIZE THAT SUCH SAVINGS MAY BE NULLIFIED IN PRACTICE BY INDULGENT EXTENSION OF THE AMENDMENT TO INAPPROPRIATE CASES OR BY ENFORCED CONSIDERATION IN COURTS

OF APPEALS OF MANY ILL-FOUNDED APPLICATIONS FOR REVIEW. THE PROBLEM, THEREFORE, IS TO PROVIDE A PROCEDURAL SCREEN THROUGH WHICH ONLY THE DESIRED CASES MAY PASS, AND TO AVOID THE WASTAGE OF A MULTITUDE OF FRUITLESS APPLICATIONS TO INVOKE THE AMENDMENT CONTRARY TO ITS PURPOSE. THE COMMITTEE FEELS THAT JUDGE CLARK'S PROPOSAL AFFORDS THE BEST PROTECTION AGAINST VIOLATION OF THE PURPOSE OF THE AMENDMENT. WE BELIEVE THAT THE CERTIFICATE OF THE TRIAL JUDGE IS ESSENTIAL BOTH TO RECOGNITION OF THE APPROPRIATE CASE AND TO REJECTION OF APPLICATIONS CALCULATED MERELY TO DELAY THE DAY OF JUDGMENT. ONLY THE TRIAL COURT CAN BE FULLY INFORMED OF THE NATURE OF THE CASE AND THE PECULIARITIES WHICH MAKE IS APPROPRIATE TO INTERLOCUTORY REVIEW AT THE TIME DESIRABILITY OF THE APPEAL MUST BE DETERMINED; AND HE IS PROBABLY THE ONLY PERSON ABLE TO FORECAST THE FURTHER COURSE OF THE LITIGATION WITH ANY DEGREE OF ACCURACY. IMMEDIATE AVAILABILITY OF COUNSEL FOR INFORMAL CONFERENCE SHOULD PROVE A GREAT ADVANTAGE TO THE TRIAL JUDGE IN ISOLATING THE EXTRAORDINARY CASE IN WHICH VALUABLE SAVINGS COULD BE EXPECTED TO FOLLOW AN IMMEDIATE REVIEW. REQUIREMENT THAT THE TRIAL COURT CERTIFY THE CASE AS APPROPRIATE FOR APPEAL SERVES THE DOUBLE PURPOSE OF PROVIDING THE APPELLATE COURT WITH THE BEST INFORMED OPINION THAT IMMEDIATE REVIEW IS OF VALUE, AND AT ONCE PROTECTS APPELLATE DOCKETS AGAINST A FLOOD OF PETITIONS IN INAPPROPRIATE CASES. IT IS THE *5263 OPINION OF THE COMMITTEE THAT AVOIDANCE OF ILL-FOUNDED APPLICATIONS IN THE COURTS OF APPEALS FOR PIECEMEAL REVIEW IS OF PARTICULAR CONCERN. IF THE CONSEQUENCE OF CHANGE IS TO BE CROWDED APPELLATE DOCKETS AS WELL AS ANY SUBSTANTIAL NUMBER OF UNJUSTIFIED DELAYS IN THE TRIAL COURT, THE BENEFITS TO BE EXPECTED FROM THE AMENDMENT MAY WELL BE OUTWEIGHED BY THE LOST MOTION OF PREPARATION, CONSIDERATION, AND REJECTION OF UNWARRANTED APPLICATIONS FOR ITS BENEFITS. FOR THESE REASONS, THE COMMITTEE IS COMMITTED TO LIMITATION OF THE NEW INTERLOCUTORY APPEAL TO CASES IN WHICH THE TRIAL COURT AND THE APPELLATE COURT CONCUR IN A FINDING THAT ULTIMATE DISPOSITION WILL THEREBY BE FACILITATED.
RESPECTFULLY SUBMITTED,
JOHN C. PICKETT,
EDGAR S. VAUGHT,
EUGENE RICE,
DELMAS C. HILL,
GEORGE SIEFKIN,
RICHARD B. MCDERMOTT,
ROYCE H. SAVAGE, CHAIRMAN.

(Note: 1. PORTIONS OF THE SENATE, HOUSE AND CONFERENCE REPORTS, WHICH ARE DUPLICATIVE OR ARE DEEMED TO BE UNNECESSARY TO THE INTERPRETATION OF THE LAWS,
ARE OMITTED. OMITTED MATERIAL IS INDICATED BY FIVE ASTERISKS: *****.
2. TO RETRIEVE REPORTS ON A PUBLIC LAW, RUN A TOPIC FIELD SEARCH
USING THE PUBLIC LAW NUMBER, e.g., TO(99-495))


S. REP. 85-2434, S. Rep. No. 2434, 85TH Cong., 2ND Sess. 1958, 1958 U.S.C.C.A.N. 5255, 1958 WL 3723 (Leg.Hist.)
END OF DOCUMENT

# ATTACHMENT

# E

**Chart 11**

W. R. Grace & Co.
Notes to Combined Financial Statements
January 31, 2007

## 1. Basis of Presentation and Summary of Significant Accounting and Financial Reporting Policies

W. R. Grace & Co., through its subsidiaries, is engaged in specialty chemicals and specialty materials businesses on a worldwide basis through two operating segments: "Grace Davison," which includes silica- and alumina-based catalysts and materials used in a wide range of industrial applications; and "Grace Performance Chemicals," which includes specialty chemicals and materials used in commercial and residential construction and in rigid food and beverage packaging.

W. R. Grace & Co. conducts substantially all of its business through a direct, wholly-owned subsidiary, W. R. Grace & Co.-Conn. ("Grace-Conn."). Grace-Conn. owns substantially all of the assets, properties and rights of W. R. Grace & Co. on a consolidated basis, either directly or through subsidiaries.

As used in these notes, the term "Company" refers to W. R. Grace & Co. The term "Grace" refers to the Company and/or one or more of its subsidiaries and, in certain cases, their respective predecessors.

*Voluntary Bankruptcy Filing* – During 2000 and the first quarter of 2001, Grace experienced several adverse developments in its asbestos-related litigation, including: a significant increase in personal injury claims, higher than expected costs to resolve personal injury and certain property damage claims, and class action lawsuits alleging damages from Zonolite Attic Insulation ("ZAI") a former Grace attic insulation product.

After a thorough review of these developments, the Board of Directors concluded that a federal court-supervised bankruptcy process provided the best forum available to achieve fairness in resolving these claims and on April 2, 2001 (the "Filing Date"), Grace and 61 of its United States subsidiaries and affiliates, including Grace-Conn. (collectively, the "Debtors"), filed voluntary petitions for reorganization (the "Filing") under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). The cases were consolidated and are being jointly administered under case number 01-01139 (the "Chapter 11 Cases"). Grace's non-U.S. subsidiaries and certain of its U.S. subsidiaries were not included in the Filing.

Under Chapter 11, the Debtors have continued to operate their businesses as debtors-in-possession under court protection from creditors and claimants, while using the Chapter 11 process to develop and implement a plan for addressing the asbestos-related claims. Since the Filing, all motions necessary to conduct normal business activities have been approved by the Bankruptcy Court. (See Note 2 for Chapter 11-Related Information.)

*Basis of Presentation* – The interim Combined Financial Statements presented herein represent the results of operations, cash flows and financial position of the Debtors. These financial statements pertain to periods beginning with, and subsequent to, the Filing Date and have been prepared in conformity with requirements of the Bankruptcy Court. Consequently, these financial statements do not purport to present the financial performance of W. R. Grace & Co. in conformity with U.S. generally accepted accounting principles which would require the consolidation of all controlled subsidiaries and more extensive notes and analysis related to the worldwide operations of W. R. Grace & Co. Financial activity of non-Debtor entities is not presented herein. However, all non-Debtor entities are either directly or indirectly controlled by the Debtors and, accordingly, non-Debtor financial results are reflected under the equity method of accounting. These financial statements are unaudited and should be read in conjunction with the consolidated financial statements presented in the Company's 2006 Annual Report on Form 10-K and other periodic filings with the U.S. Securities and Exchange Commission.

These Interim Combined Financial Statements reflect all adjustments that, in the opinion of

1

**CERTIFICATE OF SERVICE**

I, William D. Sullivan, hereby certify that on the 4th day of April, 2007, I caused a copy

of the *ZAI Claimants' Motion for Reconsideration of March 26, 2007 Order* via First Class Mail

to the parties on the attached service list.




*April 4, 2007*                                    */s/ William D. Sullivan*
Date                                               William D. Sullivan

Kirkland & Ellis LLP
David M. Bernick, P.C.
Janet S. Baer
Salvatore F. Bianco
200 East Randolph Drive
Chicago, IL  60601

Reed Smith, LLP
James J. Restivo, Jr.
435 Sixth Avenue
Pittsburgh, PA  15210

Pachulski Stang Ziehl Young Jones &
Weintraub LLP
Laura Davis Jones
James E. O'Neill
919 N. Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705

Bilzin Sumberg Baena Price & Axelrod LLP
Scott L. Baena
Jay M. Sakalo
200 S. Biscayne Blvd., Suite 2500
Miami, FL  33131-2336

Ferry Joseph & Pearce, P.A.
Michael B. Joseph
Theordore J. Tacconelli
Lisa L. Coggins
824 Market Street, Suite 904
P.O. Box 1351
Wilmington, DE  19899

Orrick, Herrington & Sutcliffe LLP
Roger Frankel
Richard H. Wyron
3050 K Street, NW
Washington, DC  20007

Phillips, Goldman & Spence, P.A.
John C. Phillips, Jr.
1200 N. Broom Street
Wilmington, DE  19806

Stroock & Stroock & Lavan LLP
Lewis Kruger
Kenneth Pasquale
180 Maiden Lane
New York, NY  10038
Duane Morris LLP

Michael R. Lastowski
Richard W. Riley
1100 N. Market Street, Suite 1200
Wilmington, DE  19801

Duane Morris LLP
William S. Katchen
744 Broad Street, Suite 1200
Newark, NJ  07102

Kramer Levin Naftalis & Frankel LLP
Philip Bentley
Gregory Horowitz
Gary M. Becker
1177 Avenue of the Americas
New York, NY 10036

Klett Rooney Lieber & Schorling
Teresa K.D. Currier
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE  19801

Caplin & Drysdale, Chartered
Elihu Inselbuch
375 Park Avenue, 35th Floor
New York, NY  10152

Caplin & Drysdale, Chartered
Peter Van N. Lockwood
Nathan D. Finch
Walter B. Slocombe
Jeffrey A. Liesemer
One Thomas Circle, NW
Washington, DC  20005

Cambpell & Levine, LLC
Marla Rosoff Eskin
Mark T. Hurford
Kathleen Campbell Davis
800 N. King Street, Suite 300
Wilmington, DE  19801

Office of the United States Trustee
David M. Klauder
Trial Attorney
J. Caleb Boggs Federal Building
844 King Street, Suite 2207
Lockbox 35
Wilmington, DE  19801